**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

**WIRTGEN AMERICA, INC.**,

        Plaintiff,

        v.

**UNITED STATES OF AMERICA**; **DEPARTMENT OF HOMELAND SECURITY**; **U.S. CUSTOMS AND BORDER PROTECTION**; **CHAD F. WOLF** in his official capacity as Acting Secretary of the Department of Homeland Security; **MARK A. MORGAN** in his official capacity as Acting Commissioner of U.S. Customs and Border Protection; **JUAN J. PORRAS** in his official capacity as Director of Machinery Center of Excellence and Expertise of U.S. Customs and Border Protection; and **CHARLES R. STEUART** in his official capacity as Chief, Intellectual Property Rights and Restricted Merchandise Branch, Office of Trade, U.S. Customs and Border Protection,

        Defendants.

Case No. ___20-00027_____

## COMPLAINT

Plaintiff Wirtgen America, Inc. ("Wirtgen"), brings this Complaint against the following Defendants: the United States of America; the Department of Homeland Security; the Honorable Chad F. Wolf in his official capacity as Acting Secretary of the Department of Homeland Security; U.S. Customs and Border Protection ("Customs"); the Honorable Mark A. Morgan in his official capacity as Acting Commissioner of Customs; Juan J. Porras in his official capacity as Director of Machinery Center of Excellence and Expertise of Customs; and Charles R. Steuart in his official capacity as Chief, Intellectual Property Rights and Restricted Merchandise Branch, Office of Trade, Customs, and alleges as follows:

## NATURE OF THE ACTION

1.      This action seeks reversal of the denial by Customs of a protest filed by Wirtgen against Customs' exclusion of certain redesigned Wirtgen 1810 Series road-milling machines ("Redesigned 1810 Series machines") sought to be entered into the United States by Wirtgen. Customs detained and excluded six of Wirtgen's Redesigned 1810 Series machines purportedly pursuant to a Limited Exclusion Order ("LEO") issued by the U.S. International Trade Commission ("Commission") following a patent infringement investigation, Investigation No. 337-TA-1088 ("the 1088 Investigation"), which excluded certain road-construction machines covered by claim 19 of U.S. Patent No. 7,140,693 (the "'693 patent," attached hereto as Exhibit A).

2.      Customs exceeded its authority by detaining and excluding from importation Wirtgen's Redesigned 1810 Series machines without providing any showing that these machines fall within the scope of the LEO. When Wirtgen protested these exclusions, Customs denied those protests (as to six Redesigned 1810 Series machines) and ruled that its exclusion decisions in enforcing Section 337 exclusion orders are no longer subject to protest or review by this Court.

3.      Wirtgen seeks an order directing Customs to grant the excluded machines entry into the United States immediately.

4.      Wirtgen further seeks declaratory relief ordering that the LEO does not cover the Redesigned 1810 Series machines because they were not adjudicated by the Commission and that Wirtgen's certification complies with the requirements of the LEO.

## JURISDICTION

5.      This case involves Defendants' unlawful exclusion of goods from entry into the United States, and in particular, is a civil action commenced to challenge Customs' denial of Wirtgen's Protests of exclusion that were filed pursuant to 19 U.S.C. § 1514.

6.      This court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1581(a) & (i).

## RELATED CASES

7.      On January 24, 2020, Wirtgen filed a complaint against Defendants in the U.S. District Court for the District of Columbia, Case No. 1:20-cv-00195-CRC, to seek permanent injunctive and declaratory relief against Defendants for claims arising out of unlawful, arbitrary-and-capricious actions in interpreting and enforcing the LEO, violation of the Appointments Clause of the U.S. Constitution, and violation of procedural due process. In that action, Wirtgen has a pending motion for a temporary restraining order and preliminary injunction to prevent Defendants from continuing to unlawfully detain, deny entry to, exclude, or seize Wirtgen's machines. In contrast, this action challenges Defendants' unlawful denial of Wirtgen's protests and seeks to enjoin the exclusion or seizure of the six machines that were subject to those protests.

## STATEMENT OF FACTS

### A.      Parties

8.      Plaintiff Wirtgen is a privately held corporation organized and existing under the laws of the state of Tennessee, with its principal place of business at 6030 Dana Way, Antioch, Tennessee 37013-3116.

9.      Wirtgen is the exclusive U.S. distributor for products of the Wirtgen Group companies, including Wirtgen-brand milling, recycling, and paving machines, Vögele-brand asphalt-paving machines, Hamm-brand rollers, and Kleemann-brand rock-crushing machines.

10.     Road-milling machines are a key component of Wirtgen's business. These machines are used by the heavy construction industry in road projects and are essential to many high-value construction projects with strict deadlines.

11.     Wirtgen has become the industry leader not only through the sale and distribution of innovative road-milling machines of the highest quality, but also through the provision of custom manufacturing, support, and training services that help customers to successfully use these machines.

12.     Wirtgen designs, markets, and sells road-milling machines, including the Redesigned 1810 Series machines at issue in this case.

13.     Wirtgen is suffering injury as a result of Customs' unlawful denial of Wirtgen's protests regarding Customs' unlawful exclusion of the Redesigned 1810 Series machines.

14.     Wirtgen is the real party in interest and has standing to bring this action.

15.     Defendants are responsible for the exclusion of Wirtgen's Redesigned 1810 Series machines and the denial of Wirtgen's protests. They are thus the proper party defendants here.

**B.     The U.S. International Trade Commission and U.S. Customs and Border Protection**

16.     The U.S. International Trade Commission's authority to investigate goods accused of patent infringement comes from Section 337 of the Tariff Act of 1930 (as amended). This statute prohibits "[t]he importation into the United States . . . of articles that infringe a valid and enforceable United States patent." 19 U.S.C. § 1337(a)(1)(B).

17.     The Commission has authority to investigate alleged violations on complaint or on its own initiative, the investigation of which includes a determination of (i) whether the articles infringe, and (ii) whether the patent is valid and enforceable, as well as "[a]ll legal and equitable defenses" that may be presented. 19 U.S.C. § 1337(b) and (c).

18.    If, as a result of the investigation, the Commission determines that there is a violation of this section, the Commission shall direct that the articles imported by any person violating the provision of Section 1337 be excluded from entry. 19 U.S.C. § 1337(d)(1).

19.    The Commission "direct[s] the articles concerned" to "be excluded" by issuing an exclusion order. *Id.*

20.    On information and belief, the Intellectual Property Rights and Restricted Merchandise Branch ("IPR Branch"), Office of Trade, of Customs is responsible for enforcing exclusion orders.

21.    On information and belief, after the Commission determines that a respondent has imported "articles that infringe a valid and enforceable United States patent," 19 U.S.C. § 1337(a)(1)(B)(i), the Commission issues a notice to the Secretary of the Treasury and to the IPR Branch to exclude "the articles concerned." 19 U.S.C. § 1337(d)(1).

22.    On information and belief, the Commission addressed and transmitted the notice of the LEO to Defendant Charles Steuart of the IPR Branch of Customs.

23.    Section 1337 of Title 19 is the only source of authority for the executive branch to exclude patent-infringing goods from importation into the country.

24.    The LEO, provided by the Commission, is the only determination of which goods are infringing and shall be excluded.

25.    There is no other source of authority pursuant to which the Department of Homeland Security or Customs, through the IPR Branch or otherwise, may detain, seize, or exclude goods at ports of entry to the United States on the basis of patent infringement.

C.    **Proceedings Before the U.S. International Trade Commission**

26.    Caterpillar Inc. and Caterpillar Paving Products, Inc. filed a complaint before the U.S. International Trade Commission asserting, *inter alia*, that certain models of Wirtgen's

milling machines infringe U.S. Patent No. 7,140,693 (the "'693 patent"). *See* Investigation No. 337-TA-1088, *Certain Road Construction Machines and Components Thereof* (instituted Nov. 29, 2017).

27.     The Commission's administrative law judge ("ALJ") conducted an evidentiary hearing on September 25 and 26, 2018, and issued a Final Initial Determination ("FID") finding a violation of Section 337 on February 14, 2019.

28.     The FID found all the asserted claims invalid except claim 19.

29.     Specifically, the FID found that claims 1, 15, 16, 17, 18, 24, 26, 27, 28, 36, and 38 of the '693 patent are invalid as anticipated under 35 U.S.C. § 102 by the prior art Bitelli SF 102 C machine, and claims 1, 15, 16, 17, 18, 24, 26, 27, 36, and 38 of the '693 patent are invalid as obvious under 35 U.S.C. § 103 in view of the prior art Bitelli Volpe SF 100 T4M machine and U.S. Patent No. 3,633,292 to Ulrich.

30.     The FID also found that the Wirtgen W 100 CFi, W 120 CFi, and W 130 CFi road-milling machines (collectively, the "1810 Series" machines), infringe claim 19.

31.     Specifically, the FID found that the swing leg on these machines rotates by an actuator rotating a portion of the lifting column on which the swing leg is mounted, as recited in claim 19.

32.     The ALJ recommended that the Commission issue a LEO against Wirtgen.

33.     The Commission affirmed the administrative law judge's determination in relevant part and issued the recommended remedies against Wirtgen's 1810 Series machines.

34.     Wirtgen timely appealed the Commission's decision to the United States Court of Appeals for the Federal Circuit, and that appeal remains pending.

35.     While the Commission's investigation was underway, Wirtgen filed a petition for *inter partes* review ("IPR") at the United States Patent and Trademark Office ("USPTO") challenging the validity of the '693 patent. *See Wirtgen Am., Inc. v. Caterpillar Paving Prods., Inc.*, IPR2018-01201, Paper 13 (Jan. 8, 2019) (instituting review of all challenged claims). On December 13, 2019, the Patent Trial and Appeal Board ("PTAB") issued a Final Written Decision determining that all challenged claims—including claim 19—are unpatentable as obvious on two independent bases. *See id.*, Paper 32 (Dec. 13, 2019).

36.     Also during the course of the Commission's investigation, Wirtgen redesigned the swing leg of its 1810 Series machines.

37.     Wirtgen based its Redesigned 1810 Series machines on features of prior-art swing-leg mountings.

38.     The FID found those prior-art swing-leg mountings did not practice claim 19.

39.     The Redesigned 1810 Series machines do not include an actuator that rotates a portion of the lifting column on which the swing leg is mounted.

40.     Wirtgen therefore replaced the features that the Commission found to infringe with features the Commission found not to infringe.

41.     Wirtgen produced evidence regarding the operability and design of its redesigned machines in the 1088 Investigation.

42.     The ALJ held that she would not adjudicate the redesigns or determine infringement in her initial determination in that Investigation.

43.     She determined that "[t]hese designs" are "outside the scope of [the] investigation" and "not ripe for a determination of infringement or non-infringement in this investigation."

44.    The Commission adopted this portion of the ALJ's determination, making it final.

45.    Following the Commission's infringement determination, Wirtgen undertook significant efforts to commercialize its Redesigned 1810 Series machines to avoid the '693 patent, so that it could continue importing these machines without violating the terms of the LEO.

46.    Wirtgen incorporated a designation for the redesigned swing leg into its product label.

47.    That designation identifies to third parties (e.g., Customs agents) that such machines are Redesigned 1810 Series machines.

48.    The Redesigned 1810 Series machines still bear serial numbers designating them as 1810 Series machines but have new branding.

49.    The new branding includes "W 100 XFi."

50.    The new branding also includes "W 100 XTi."

51.    The new branding also includes "W 120 XFi."

52.    The new branding also includes the "W 120 XTi."

53.    The new branding also includes the "W 130 XFi."

54.    The new branding also includes the "W 130 XTi."

55.    The "X" indicates that the machines have a new swing-leg design.

56.    The new swing-leg design is ubiquitous across all of the Redesigned 1810 Series machines.

57.    The "F" and the "T" indicate differences among the machines regarding features wholly unrelated to the swing leg.

58.    Those differences are chiefly related to cost.

**D.    Wirtgen Commercialized Its Non-Infringing Redesigned 1810 Series Machine And Presented It To Customs At The Port**

59.    Following the Commission's transmission of the notice of the LEO to Mr. Steuart at the IPR Branch, Wirtgen reached out to the IPR Branch to arrange a meeting.

60.    Wirtgen requested the meeting to demonstrate which of Wirtgen's different products were subject to the LEO and how Customs agents could distinguish between excluded and non-excluded products.

61.    Wirtgen manufactures and imports different sizes, classes, and kinds of road milling machines, recyclers, pavers, and replacement parts.

62.    The 1088 Investigation concerned one particular series of milling machines (i.e., the 1810 Series machines), which includes a rear swing leg.

63.    Wirtgen sells other series of milling machines that do not include swing legs.

64.    The only method, manner, or fashion by which Wirtgen could explain the information to the agents inspecting its products at ports of entry was through a presentation to the IPR Branch of Customs.

65.    On August 13, 2019, Wirtgen's counsel met with Customs officials in Washington, D.C., to discuss the structure and operation of the Redesigned 1810 Series machines, as well as to explain Wirtgen's other products.

66.    Wirtgen also explained how to identify the Redesigned 1810 Series machines by their number and designation.

67.    On August 15, 2019, Wirtgen's counsel exchanged emails with Customs officials regarding that meeting.

68.    On September 5, 2019, Wirtgen's counsel sent Customs a memorandum (Sept. 5 Memorandum).

69.     That Sept. 5 Memorandum explained how the swing-leg design of the Redesigned 1810 Series machines is different from the design of the excluded 1810 Series machine.

70.     That Sept. 5 Memorandum also explained why the swing-leg design of the Redesigned 1810 Series machines is not subject to the LEO, including a thorough application of the Commission's findings concerning claim 19 to that design.

71.     The Sept. 5 Memorandum included photographs and videos of the 18101069 machine.

72.     The sole claim at issue, claim 19, depends from independent claim 17, which recites:

> 17. A method of controlling the position of at least one wheel or track of a plurality of wheels or tracks supporting a frame of a work machine, said at least one wheel or track being connected to a respective lifting column connected to said frame by a support arm, said lifting column being adapted to raise and lower said frame relative to the respective wheel or track, said method comprising the steps of:
>
> controllably actuating a first actuator to pivot said support arm relative to said frame to position said wheel or track between a projecting or retracted position relative to said frame, the projecting and retracted position forming an arc of at least 90°, and
>
> controllably actuating a second actuator to position said wheel or track in a selected rotational direction about a vertical axis of said wheel or track.

'693 patent, 10:43-57 (emphasis added). Claim 19 adds the further limitation:

> 19. The method of claim 17, wherein positioning said wheel or track in said rotational direction includes rotating said lifting column.

*Id*. at 10:63-65. (emphasis added).

73.     The parties agreed that the term "rotating said lifting column" should be construed to mean "rotating at least a portion of said lifting column." Order No. 28 (*Markman* Order) at 13. The ALJ adopted that claim construction. *Id.*; Comm'n Op. at 18-19.

74.     The ALJ further interpreted the scope of claim 19 to require rotational coupling of the lifting column and track in order to find the claim not anticipated by the Bitelli SF 102 C.

75.     The FID found that the swing leg of the SF 102 C has a yoke at the bottom of the lifting column that rotates the tracks, and that the yoke is a distinct structure from the lifting column.

76.     The FID found that the scope of claim 19 did not include the swing leg of the Bitelli SF 102 C because "rotating the yoke [of the SF 102 C] … does not rotate the lifting column." FID at 36.

77.     The rotation of the swing leg of the SF 102 C is shown in the Commission record at Commission record at RPX-0519C.mov.

78.     When the track of the swing leg of the SF 102 C is rotated, the keyway remains in the same position relative to the frame, demonstrating that the lifting column does not rotate when the steering cylinder extends or retracts.

79.     The Redesigned 1810 Series machines have a swing leg whose yoke and lifting column are rotationally decoupled.

80.     With respect to the swing leg of the Redesigned 1810 Series machines, rotating the track does not rotate the lifting column.

81.     With respect to the swing leg of the Redesigned 1810 Series machines, rotating the yoke does not rotate the lifting column.

82.     Photos and videos of the swing leg of the Redesigned 1810 Series machines provided by Wirtgen to Customs demonstrate that positioning (steering) the track does not include rotating the lifting column.

83.     On September 5, 2019, Wirtgen's counsel informed Customs that Wirtgen would soon import, at the port of Baltimore, Maryland, the first Redesigned 1810 Series machine, a W 120 XFi machine with serial number 18101069.

84.     Wirtgen informed Customs how to identify the Redesigned 1810 Series machines using the information in the manifest.

85.     Wirtgen also informed Customs how to identify the Redesigned 1810 Series machines by visual inspection.

86.     Wirtgen also offered to send a technician to (i) demonstrate the operation of the Redesigned 1810 Series machine at the port, and (ii) answer any questions that Customs may have about the swing leg.

87.     As of September 9, 2019, Customs possessed all the information necessary to determine whether the 18101069 machine fell within the scope of what the Commission found to infringe claim 19.

**E.     Customs Detained and Excluded Wirtgen's Machines**

88.     On September 9, 2019, Wirtgen imported the W 120 XFi with serial number 18101069.

89.     Customs permitted that W 120 XFi machine to be imported, i.e., it was not detained.

90.     All subsequent Redesigned 1810 Series machines have used the same swing-leg design as the 18101069 machine.

91.     Between about November 4, 2019, and about December 13, 2019, Wirtgen imported additional W 120 XFi and W 120 XTi machines. Customs permitted those machines to be imported; they were not detained.

92.     The W 120 XFi Redesigned 1810 Series machines and W 120 XTi Redesigned 1810 Series machines that Customs permitted to be imported each used the same swing-leg design as the 18101069 machine.

93.     On November 18, 2019, at the port of Brunswick, Georgia, Customs detained two Redesigned 1810 Series machines from Entry Number SCS-73730948.

94.     These two machines were a W 120 XFi having serial number 18101084 and a W 120 XTi having serial number 18101086.

95.     On November 21, 2019 at the port of Brunswick, Georgia, Customs detained three more Redesigned 1810 Series machines from Entry Number SCS-75549544.

96.     These three machines were a W 120 XTi having serial number 18101088, a W 120 XTi  having serial number 18101089, and a W 120 XFi  having serial number 18101092.

97.     Customs issued notices of detention for both detained shipments.

98.     Customs did not provide any reason for these detentions, specify the tests to be conducted, or provide Wirtgen the opportunity to submit additional information.

99.     On December 3, 2019, at the port of Baltimore, Maryland, Customs detained a sixth Redesigned 1810 Series machine from Entry Number SCS-77482413 having serial number 18101094.

100.     The notice of detention for this sixth machine stated that "[t]he exclusion order states machines with a serial number above 18101069 may be subject to refusal."

101.    The LEO does not state that machines with a serial number above 18101069 may be subject to refusal.

102.    The notice of detention for the sixth machine did not specify the tests to be conducted or provide Wirtgen the opportunity to submit additional information.

103.    The notices of detention violated 19 U.S.C. § 1499(c)(2).

104.    Wirtgen, via its broker, submitted certifications that these machines were outside the scope of Paragraph 1 of the LEO.

105.    On December 17, 2019, Customs excluded the five Redesigned 1810 Series machines that were detained in  Brunswick.

106.    The Notices of Exclusion admitted that the Redesigned 1810 Series machines were not adjudicated to infringe by the Commission.

107.    The Notices of Exclusion stated that the Redesigned 1810 Series machines were "potentially infringing."

108.    The Notices of Exclusion never determined whether the Redesigned 1810 Series machines infringe claim 19.

109.    The Notices of Exclusion placed the burden of proof on Wirtgen to show "as a condition of entry" that the Redesigned 1810 Series Machines do not infringe claim 19.

110.    The Notices of Exclusion did not consider any of the evidence of noninfringement that Wirtgen submitted to Customs on September 5, 2019.

111.    Customs did not provide Wirtgen an opportunity to submit additional evidence before excluding the Redesigned 1810 Series machines.

112.    The Notices of Detention did not request additional evidence regarding the Redesigned 1810 Series machines.

113.    The Notices of Exclusion did not indicate that Customs looked at the swing leg of the Redesigned 1810 Series machines.

114.    The Notices of Exclusion concluded that Wirtgen failed to meet its burden of proof to show non-infringement of the Redesigned 1810 Series machines because they had a different serial number than the 18101069 machine described in Wirtgen's September memorandum and because some of the machines used an "XTi" model name instead of the "XFi" name born by the 18101069 machine.

115.   The Notices of Exclusion refused Wirtgen's certification because "CBP will not accept a certification that an article falls outside the scope of an exclusion order absent a determination by CBP or the Commission that the article is not subject to the exclusion order."

116.    The Notices of Exclusion faulted Wirtgen for pursuing a protest under 19 C.F.R. § 174 instead of an "inter partes" administrative ruling under 19 C.F.R. § 177.

117.    On December 27, 2019, Customs excluded a sixth machine. This machine was a W 120 XFi having serial number 18101094.

118.    Defendant Juan Porras, Director for the Center for Excellence, signed the Notices of Exclusion.

119.    On December 24, 2019, Wirtgen filed a protest against the exclusion of Entry Numbers SCS-73730948 and SCS-75549544.

120.    Wirtgen provided a sworn declaration from its Vice President of Product Support explaining the structure and operation of the excluded Redesigned 1810 Series machines.

121.    Mr. Schmidt testified that the swing leg of all Redesigned 1810 Series machines, including the excluded machines, was identical to that of the 18101069 machine.

122.    On December 27, 2019, Customs excluded a sixth machine. This machine was a W 120 XFi having serial number 18101094.

123.    The Notice of Exclusion for the sixth machine repeated the same arguments and reasoning as the Notices of Exclusion for the first five machines.

124.    The Notice of Exclusion for the sixth machine did not consider the declaration of Mr. Schmidt provided in the protest filed on December 24, 2019.

125.  On December 31, 2019, Wirtgen filed a protest against the exclusion of Entry Number SCS-77482413 that included the same Declaration from Mr. Schmidt.

**F.      Customs Denied Wirtgen's Protest By Ruling That Its Enforcement Of Section 337 Exclusion Orders Is Not Protestable Or Subject To Judicial Review**

126.    Wirtgen's December 24 and December 31 protests challenged Customs exclusion of Wirtgen's Redesigned 1810 Series machines under the LEO.

127.    Wirtgen argued that its Redesigned 1810 Series machines do not infringe claim 19, that the LEO extends only to machines adjudicated by the Commission to infringe, that Customs lacks statutory authority and appointed officers to determine infringement, that Customs improperly rejected Wirtgen's certification, and that Customs may not place the burden of proof on Wirtgen.

128.    Customs denied Wirtgen's December 24, 2019 protest on January 21, 2020.

129.    Customs denied Wirtgen's December 31, 2019 protest on January 27, 2020.

130.    Customs' entire basis for the denials was that "[t]he protest does not raise a protestable issue within the meaning of 19 U.S.C. 1514."

131.    In its first decision denying Wirtgen's protest, Customs stated, "we find that the instant exclusions made by CBP pursuant to the 1088 LEO issued by the Commission under 19 U.S.C. § 1337 is not a subject matter subject to protest."

132.    Customs previously allowed protests of its exclusion decisions pursuant to Section 337 exclusion orders for several decades.

133.    In its denial of Wirtgen's protest, Customs stated that whether Customs exclusion decisions are subject to protest "is not an issue that CBP, or any court, has a taken a considered analysis of in the past. Rather, this issue has largely gone undisputed and unaddressed."

134.    Customs asserted that "Wirtgen's underlying cause of action in the protest stems from the exclusion order issued by the Commission in the 1088 investigation, rather than CBP's exclusion of merchandise from entry."

135.    Customs, not the Commission, determined to exclude Wirtgen's Redesigned 1810 Series machines as "potentially infringing" claim 19.

136.    Customs, not the Commission, refused to accept Wirtgen's certification that the Redesigned 1810 Series machines are outside the scope of paragraph 1 of the LEO.

137.    The denial of Wirtgen's protest was signed by Charles Steuart, a Customs officer.

138.    The Commission's final determinations are appealable under Section 1337(c) of Title 19.

139.    Wirtgen filed an appeal of the Commission's final determination in the 1088 investigation on August 28, 2019.

140.    Determinations of Customs are not appealable under Section 1337(c) of Title 19.

141.    The Redesigned 1810 Series machines that Customs has excluded are not the articles that were adjudicated in the 1088 Investigation.

142.    The administrative law judge found that redesigned products were outside the scope of the 1088 Investigation.

143.    These products are therefore also outside the scope of the LEO.

144.    Customs wrongly detained and excluded Wirtgen's modified machines.

145.    Customs does not have the authority to exclude products that fall outside the scope of a LEO.

### G.    Harm to Wirtgen

146.    Wirtgen's inability to deliver the machines excluded by Customs has already caused significant harm to Wirtgen.

147.    If Customs' continues detaining and excluding Wirtgen's shipments, Wirtgen expects to see additional delays which will cause, among other harms, loss of sales, loss of customers, loss of market share, and loss of future parts sales.

148.    None of these harms can be redressed post-exclusion.

149.    On information and belief, the Commission purported to issue a seizure and forfeiture order against future imports by Wirtgen based on Defendants' unlawful actions in excluding Wirtgen's Redesigned 1810 Series machines.

150.    Defendants' actions are irreparably harming Wirtgen's goodwill with its customers.

151.    Defendants' actions are preventing Wirtgen from filling current orders, many of which have already been invoiced.

152.    Many of Wirtgen's customers purchase machines after committing to fulfill a contract with a third party.

153.    Thus, Wirtgen's customers can suffer significant financial losses if machines do not arrive or deliver on time.

154.    Because of the risks Wirtgen's customers face in the road-construction industry, they value Wirtgen's reliability as a business partner and vendor.

155.    Wirtgen's reputation is essential to Wirtgen's continued success in the United States.

156.    The road-milling machine market typically sees an increase in sales during the winter months, as customers seek to purchase new machines for the upcoming paving season.

157.    The Redesigned 1810 Series machines excluded by Customs thus far have already been sold and invoiced to customers.

158.    Wirtgen's customers expected delivery of the Redesigned 1810 Series machines by the end of 2019. The detained machines still have not been delivered.

159.    Failure to timely deliver these machines has caused substantial negative consequences for Wirtgen, its dealers, and its customers.

160.    Work and tax incentives may not be realized.

161.    Wirtgen also expects that the orders for these machines will be cancelled if Wirtgen cannot promptly deliver the machines.

162.    The total retail sales value for the Redesigned 1810 Series machines excluded thus far is approximately millions dollars.

163.    By excluding these machines, despite the plain language of the LEO and statutory limits on its authority, Customs has cost Wirtgen and its customers hundreds of thousands of dollars and harmed Wirtgen's reputation and customer relationships that stand to deprive Wirtgen of millions in continued sales.

## <u>COUNT I:</u>
## <u>DEFENDANTS' UNLAWFUL DENIAL OF PROTESTS</u>
## <u>28 U.S.C. §§ 2201–2202; 19 U.S.C. §§ 1581(a) and (i)</u>

164.    Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1-163 of this Complaint.

165.    Exhibit B, Notice of Exclusion of Entry Number SCS-73730948, Exhibit C, Notice of Exclusion of Entry Number SCS-75549544, and Exhibit D, Notice of Exclusion of Entry Number SCS-77482413 list the particular entries that Wirtgen sought to enter into the United States and that were subsequently excluded from entry into the United States by Customs, who asserted that those goods were subject to exclusion pursuant to the LEO.

166.    Wirtgen timely protested Customs' exclusion of its goods from entry into the United States. *See* 5 U.S.C. § 706(2)(A). Exhibit E, Wirtgen's Protest No. 170119100004; Exhibit F, Wirtgen's Protest No. 130319100552.

167.    On January 21, 2020, Customs denied Wirtgen's protest of the December 17, 2019 exclusion decisions. That denial was signed by Mr. Steuart. Exhibit G, Jan. 21, 2020 Protest Denial.

168.    On January 27, 2020, Customs denied Wirtgen's protest of the December 27, 2019 exclusion decision. That denial was signed by Mr. Steuart. Exhibit H, Jan. 27, 2020 Protest Denial.

169.    Both protest denials were sent to Mr. Porras instructing that they "should be denied as not protestable."

170.    The protests were not reviewed and acted on by a Center Director of Customs pursuant to 19 CFR 174.21(b).

171.    Customs' denial of Wirtgen's protests is arbitrary, capricious, and an abuse of discretion. *See* 5 U.S.C. § 706(2)(A).

172.    Customs' exclusion of the Redesigned 1810 Series machines is wrongful because these products do not infringe claim 19 of the '693 patent, and are therefore outside the scope of the LEO.

173.    The Redesigned 1810 Series machines that Customs has excluded are not articles that were adjudicated in the 1088 Investigation.

174.    The administrative law judge found that redesigned machines were outside the scope of the 1088 Investigation.

175.    Redesigned machines are therefore also outside the scope of the LEO.

176.    Customs wrongly detained and excluded Wirtgen's modified machines.

177.    Customs does not have the authority to adjudicate whether products infringe patents.

178.    Customs interpreted the LEO to cover potentially infringing machines.

179.    Customs provided no basis for its determination that the Redesigned 1810 Series machines were "potentially infringing."

180.    Customs did not determine that the Redesigned 1810 Series machines infringe claim 19 of the Asserted Patent.

181.    Customs does not have the authority to exclude products that fall outside the scope of a LEO.

182.    The detention and exclusion of Wirtgen's Redesigned 1810 Series machines violated the APA.

183.    The denial of Wirtgen's protest violated the APA.

184.    At least the following actions were arbitrary, capricious, and contrary to controlling law under the APA (1) Customs has ignored the plain language of the LEO, which is directed only to adjudicated products; (2) Customs has purported to enforce the LEO under Section 1337(d) of Title 19 against unadjudicated products, in contravention of Section 1337 of Title 19; (3) Customs improperly looked to unpublished and non-binding Commission

statements to interpret the LEO; (4) Customs adjudicated whether products infringe—and, in Wirtgen's case, potentially infringe—a U.S. patent without any statutory or constitutional authority to do so; and (5) when Wirtgen raised these legal deficiencies via a Rule 174 protest, Customs avoided consideration of those issues by determining—contrary to decades of prior practice—that the decision to exclude Wirtgen's machines was not subject to protest or judicial review.

185.    Accordingly, Wirtgen's protest against Customs' exclusion of these machines was wrongfully denied and should have been allowed in whole, and the machines should be immediately allowed to be entered and imported into the United States.

**COUNT II:**
**VIOLATION OF 19 U.S.C. § 1499(C)(2)**
**28 U.S.C. §§ 2201–2202; 28 U.S.C. § 1581(i)**

186.    Plaintiff realleges and incorporates by reference, as if fully set forth herein, the allegations of Paragraphs 1–185 of this Complaint.

187.    Defendants' Notices of Detention with respect to Entry Number SCS-73730948, Entry Number SCS-75549544, and Entry Number SCS-77482413 are unlawful for failing to provide the information required by 19 U.S.C. § 1499(c)(2).

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Court:

A.    Issue an order declaring that:

1.    the excluded Redesigned 1810 Series machines do not infringe claim 19 of the '693 patent;

22

2.       Defendants' detention and exclusion of the Redesigned 1810 series machines was wrongful and contrary to the law because Defendants failed to determine that those machines infringe claim 19 of the '693 patent;

3.       Defendants' detention and exclusion of the Redesigned 1810 series machines was wrongful and contrary to the law because the Commission did not determine that those machines infringe claim 19 of the '693 patent;

4.       Defendants' detention and exclusion of the Redesigned 1810 series machines was wrongful and contrary to the law because Wirtgen's certification satisfied the certification provision of the LEO

5.       Defendants' exclusion of Entry Number SCS-73730948 is void;

6.       Defendants' exclusion of Entry Number SCS-75549544 is void;

7.       Defendants' exclusion of Entry Number SCS-77482413 is void;

8.       Defendants' Decision Number H308232 denying Protest Number 170119100004 is void; and

9.       Defendants' Decision Number H308399 denying Protest Number 130319100552 is void.

B.   Issue an Order granting injunctive relief in favor of Wirtgen and against Defendants that:

1.       compels Defendants to permit entry of Wirtgen's Redesigned 1810 Series machines in Entry Numbers SCS-73730948, SCS-75549544 and SCS-77482413 into the United States immediately;

2.      compels Defendants to vacate the two exclusion decisions issued by Customs against Wirtgen on December 17, 2019 with respect to Entry Numbers SCS-73730948, SCS-75549544, and SCS-77482413; and

3.      compels Defendants to vacate Decision Number H308232 denying Protest Number 170119100004, issued by Customs against Wirtgen on January 21, 2020; and

4.      compels Defendants to vacate Decision Number H308399 denying Protest Number 130319100552, issued by Customs against Wirtgen on January 27, 2020.

C.      Grant such other and further relief as the nature of the case may admit or require, declaratory and injunctive relief requested above, and any such other relief as may be deemed just and equitable by this Court.

Date: January 30, 2020

Respectfully submitted,

/s/ Daniel E. Yonan
Daniel E. Yonan
Dallin G. Glenn
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
dyonan@sternekessler.com
dglenn@sternekessler.com

*Counsel for Plaintiff Wirtgen America, Inc.*

Case No. 20-00027

## <u>CERTIFICATE OF SERVICE</u>

      Pursuant to USCIT R. 5 and Paragraphs 5 and 6 of Administrative Order 02-01 of the U.S. Court of International Trade, I hereby certify that on January 30, 2020, I caused a copy of the forgoing to be delivered to the following individuals:

| *The United States Court of International Trade* | |
|---|---|
| United States Court of International Trade<br>1 Federal Plaza<br>New York, NY 10278-0001<br>Tel: 212-264-2800 | ☒ CM/ECF<br>☐ Hand Delivery<br>☐ Certified or Registered Mail<br>☐ First-class Mail<br>☐ Electronic Mail<br>☐ Overnight Courier |
| *The United States of America* | |
| Amy M. Rubin<br>Justin R. Miller<br>Guy R. Eddon<br>International Trade Field Office<br>U.S. Department of Justice<br>26 Federal Plaza, Room 346<br>New York, NY 10278 | ☐ CM/ECF<br>☐ Hand Delivery<br>☒ Certified or Registered Mail<br>☐ First-class Mail<br>☒ Electronic Mail<br>☐ Overnight Courier |
| *The United States Department of Homeland Security* | |
| Chad F. Wolf<br>Acting Secretary<br>U.S. Department of Homeland Security<br>245 Murray Lane, SW<br>Mail Stop 0485<br>Washington, DC 20528-0485 | ☐ CM/ECF<br>☐ Hand Delivery<br>☒ Certified or Registered Mail<br>☐ First-class Mail<br>☐ Electronic Mail<br>☐ Overnight Courier |
| *United States Customs and Border Protection* | |
| Mark A. Morgan<br>Acting Commissioner<br>Juan J. Porras<br>Director of Machinery Center of Excellence<br>and Expertise<br>Charles R. Steuart<br>Chief, Intellectual Property Rights and<br>Restricted Merchandise Branch<br>U.S. Customs and Border Protection<br>1300 Pennsylvania Ave. NW<br>Washington, DC 20229 | ☐ CM/ECF<br>☐ Hand Delivery<br>☒ Certified or Registered Mail<br>☐ First-class Mail<br>☐ Electronic Mail<br>☐ Overnight Courier |

/s/ *Russell W. Warnick*
Russell W. Warnick
Litigation Paralegal

STERNE, KESSLER, GOLDSTEIN & FOX, P.L.L.C.
1100 New York Ave., N.W., Suite 600
Washington, D.C. 20005-3934