# IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE: THE HONORABLE TIMOTHY C. STANCEU, CHIEF JUDGE

**WIRTGEN AMERICA, INC.,**

        Plaintiff,

        v.

**UNITED STATES OF AMERICA;**
**DEPARTMENT OF HOMELAND SECURITY;**
**U.S. CUSTOMS AND BORDER PROTECTION;**
**CHAD F. WOLF** in his official capacity as Acting
Secretary of the Department of Homeland Security;
**MARK A. MORGAN** in his official capacity as
Acting Commissioner of U.S. Customs and Border
Protection; **JUAN J. PORRAS** in his official capacity
as Director of Machinery Center of Excellence and
Expertise of U.S. Customs and Border Protection; and
**CHARLES R. STEUART** in his official capacity as
Chief, Intellectual Property Rights and Restricted
Merchandise Branch, Office of Trade, U.S. Customs
and Border Protection,

        Defendants.

Case No. 1:20-cv-00027

## WIRTGEN'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.   Background ................................................................................................ 3

      A.    Statutory framework ..................................................................... 3

      B.    The underlying Commission investigation ................................... 5

      C.    Customs' enforcement of the Commission's LEO ........................ 6

      D.    The Commission's modification proceeding ................................ 9

      E.    Wirtgen's lawsuits ....................................................................... 9

III.  This Court has jurisdiction to decide Count I under sections 1581(a) and (i) ................. 10

      A.    Customs did not exclude Wirtgen's machines pursuant to a final determination of the Commission ........................................................................ 10

      B.    Defendants' jurisdictional arguments improperly assume that Customs acted pursuant to the LEO ....................................................................... 12

      C.    Congress did not channel review of Customs' exclusion decisions to the Commission ...................................................................................... 14

            1.    The Commission lacks any statutory authority to review Customs' exclusion decisions ................................................................. 15

            2.    The Commission lacks expertise to review Customs' exclusion decisions .............................................................................. 16

IV.   This Court has jurisdiction over Count II under section 1581(i)(4) ................................ 19

V.    Conclusion ................................................................................................ 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altima Commc'ns, Inc. v. Int'l Trade Comm'n,*
　2002 WL 32814194 (Fed. Cir. June 27, 2002) ........................................................17

*Amgen v. Int'l Trade Comm'n,*
　902 F.2d 1532 (Fed. Cir. 1990)......................................................................4, 13

*Bowen v. Georgetown Univ. Hosp.,*
　488 U.S. 204 (1988)......................................................................................18

*Crucible Materials Corp. v. Int'l Trade Comm'n,*
　127 F.3d 1057 (Fed. Cir. 1997)........................................................................4

*Emery, Holcombe & Blair v. United States,*
　89 U.S.P.Q. 343, 1951 WL 4626 (Cust. Ct. 1951) ............................................8, 16

*Kyocera Wireless Corp. v. Int'l Trade Comm'n,*
　2006 WL 5486628 (Fed. Cir. Feb. 6, 2006) .....................................................17

*Nippon Steel Corp. v. United States,*
　219 F.3d 1348 (Fed. Cir. 2000)........................................................................13

*One World Techs., Inc. v. United States,*
　357 F. Supp. 3d 1278 (C.I.T. 2018)..................................................8, 11, 12, 16

*Otter Prods., LLC v. Int'l Trade Comm'n,*
　2015 WL 1396719 (Fed. Cir. Mar. 16, 2015) ..................................................17

*Takashima U.S.A., Inc. v. United States,*
　886 F. Supp. 858 (C.I.T. 1995)........................................................................13

*Wirtgen America, Inc. v. United States et al.,*
　Case No. 1:20-cv-00195 (D.D.C. Jan. 24, 2020)..................................................9

**Statutes**

Tariff Act of 1930 ............................................................................... *passim*

　19 U.S.C. § 1337(a)(1)(B) ..............................................................................3

　19 U.S.C. § 1337(c) ..................................................................3, 4, 10, 11

　19 U.S.C. § 1337(d) ........................................................................................4

19 U.S.C. § 1337(e) .................................................................................................4

19 U.S.C. § 1337(f) ..................................................................................................4

19 U.S.C. § 1337(k) .............................................................................................9, 16

19 U.S.C. § 1337(k)(1) ............................................................................................4

19 U.S.C. § 1499(c)(2) ...........................................................................................19

19 U.S.C. § 1514 ....................................................................................................17

19 U.S.C. § 1514(a) .....................................................................................10, 11, 17

19 U.S.C. § 1514(a)(4) ..................................................................................... *passim*

19 U.S.C. § 1515 ....................................................................................................18

28 U.S.C. § 1295(a)(6) ............................................................................................4

28 U.S.C. § 1581(a) ......................................................................................... *passim*

28 U.S.C. § 1581(i) ...........................................................................................10, 14

**Administrative Decisions**

*Certain Digital Video Receivers*,
     Inv. No. 337-TA-1001, Comm'n Op. (ITC Dec. 6, 2017) ......................................17

*Certain Inkjet Ink Cartridges*,
     Inv. No. 337-TA-723, Notice of Comm'n Determination (ITC Aug. 26, 2015) ...................17

*Certain Marine Sonar Imaging Devices*,
     Inv. No. 337-TA-921, Comm'n Op. (ITC Oct. 20, 2016) ......................................17

**Other Authorities**

Defs.' Mot. to Dismiss, *One World Techs., Inc. v. United States*,
     No. 19-00017, Dkt. 59 (C.I.T. Feb. 15, 2019) ...........................................17

Def.'s Partial Mot. to Dismiss, *Otter Prods. LLC v. United States*,
     No. 1:14-cv-00328, Dkt. 29 (C.I.T. Dec. 16, 2014)......................................16

Int'l Trade Comm'n's Partial Mot. to Dismiss, *One World
     Techs., Inc. v. United States*,
     No. 18-0200, Dkt. 44 (C.I.T. Oct. 12, 2018) ...........................................18

I.       **Introduction**

Customs improperly excluded Wirtgen's redesigned machines under authority that it claims to derive from a limited exclusion order (LEO) issued by the U.S. International Trade Commission. This lawsuit presents the question of whether Customs properly acted pursuant to the LEO.

Prior to Customs' exclusion decisions, Wirtgen explained to Customs why Wirtgen's Redesigned 1810 Series machines should not be excluded under the LEO. Wirtgen explained that, because the Commission found its redesigns to be "outside the scope of the investigation," they could not be within the scope of the exclusion order. Wirtgen also presented ample evidence that the redesigns do not infringe. And Wirtgen provided a certification under penalty of perjury that the machines were outside the scope of paragraph 1 of the LEO.

Customs initially allowed Wirtgen to import the machines. But then Customs abruptly reversed course, ignored all Wirtgen's evidence, dismissed the certification as not meeting requirements that Customs read into the LEO, and determined—without providing any supporting rationale—that the redesigns were "potentially infringing" and that Wirtgen failed to prove they do not infringe.

Wirtgen protested those exclusions and argued: (1) that Wirtgen's Redesigned 1810 Series machines do not infringe claim 19; (2) that the LEO extends only to machines adjudicated by the Commission to infringe; (3) that Customs lacks statutory authority and appointed officers to determine infringement; (4) that Customs improperly rejected Wirtgen's certification; and (5) that Customs may not place the burden of proof on Wirtgen. Customs avoided a decision on the merits by determining—for the first time ever—that its exclusion decisions here are not protestable because they "stem[] from the exclusion order issued by the Commission in the 1088 investigation, rather than CBP's exclusion of merchandise from entry." In other words, if

1

Customs claims to act pursuant to a Commission exclusion order, then no court may review its actions. Instead, an importer must request that the Commission modify the LEO to remove the authority under which Customs excluded the products.

To accept Defendants' argument and dismiss for lack of jurisdiction, this Court must assume that Customs was properly enforcing the LEO as "a determination appealable under section 1337 of this title." If the LEO required Customs' exclusion decisions, then Customs properly denied Wirtgen's protest under the exception of section 1514(a)(4).

Take away that assumption—as the Court must—and Defendants' argument for dismissal collapses. Whether Customs was just carrying out orders is the core issue of Count I in Wirtgen's complaint, and a court must presume that the allegations of the complaint are true when considering the question of jurisdiction. Wirtgen alleged that Customs did *not* act pursuant to the LEO when it excluded Wirtgen's products. That alone decides Defendants' motion in Wirtgen's favor.

Defendants' channeling argument fails for the same reason. Defendants argue that Congress channeled disputes over Customs' exclusion decisions first to the Commission via a modification proceeding and then to the Federal Circuit on review. But a modification proceeding only allows the Commission to narrow the scope of the LEO after finding that the conditions on which a violation was found no longer exist. Thus, Defendants' channeling argument, like their statutory argument, improperly presumes that the LEO covers unadjudicated articles, contrary to Wirtgen's allegation that it does not.

Defendants appear to concede that this Court has authority to review whether Customs properly acted pursuant to the LEO: "To the extent that CBP's ministerial enforcement of the Commission's exclusion order might be subject to any review by this Court, the Court should only consider the legal question of whether CBP properly administered the Commission's

exclusion orders as encompassing redesigned goods." Yet Defendants argue that infringement

"should not be considered here." Customs' exclusion decision cannot be so parsed. This Court

has jurisdiction to review Customs' denial of Wirtgen's protests—which argued

noninfringement—and all administration and enforcement matters related to that denial. That

includes Customs' determination to exclude Wirtgen's machines as "potentially infringing"

because "Wirtgen has not met its burden to prove noninfringement."

## II.   Background

### A.   Statutory framework

Section 337 of the Tariff Act of 1930 (codified at 19 U.S.C. § 1337) and accompanying

regulations set forth an administrative process through which the Commission adjudicates

alleged unfair trade practices. As relevant here, section 337 defines "[t]he importation into the

United States . . . of articles that[ ]infringe a valid and enforceable United States patent" as an

"[u]nlawful activit[y]." 19 U.S.C. § 1337(a)(1)(B). The Commission may "investigate any

alleged violation" of section 337 "on complaint" and issue final determinations with respect to

alleged violations "on the record after notice and opportunity for a hearing in conformity with"

the Administrative Procedure Act. *Id.* § 1337(b)(1), (c). Parties who initiate Commission

investigations are referred to as "complainants," and accused parties are referred to as

"respondents." "[F]inal determination[s] of the Commission" are appealable to the Federal

Circuit. *Id.* § 1337(c).

This Court has "exclusive jurisdiction of any civil action commenced to contest the

denial of a protest." 28 U.S.C. § 1581(a). All "decisions of the Customs Service, including the

legality of all orders and findings entering into the same" involving "the exclusion of

merchandise from entry" are subject to protest. 19 U.S.C. § 1514(a)(4). The only exception is "a

determination appealable under section 1337 of this title." *Id.*

Section 1337 of Title 19, in turn, provides that "[a]ny person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g) of this section may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit." 19 U.S.C. § 1337(c).

The Federal Circuit has "exclusive jurisdiction . . . to review the final determinations of the United States International Trade Commission relating to unfair practices in import trade, made under section 337 of the Tariff Act of 1930 (19 U.S.C. 1337)." 28 U.S.C. § 1295(a)(6). "A final determination is 'a final administrative decision on the merits, excluding or refusing to exclude articles from entry' under 19 U.S.C. § 1337(d), (e), (f), or (g) (1994)." *Crucible Materials Corp. v. Int'l Trade Comm'n*, 127 F.3d 1057, 1061 (Fed. Cir. 1997); *see also Amgen v. Int'l Trade Comm'n*, 902 F.2d 1532, 1535, (Fed. Cir. 1990) ("when a decision is intrinsically a final determination, *i.e.*, a determination on the merits, then that decision is appealable under § 1337(c)") (citation omitted).

Exclusion orders issued pursuant to section 337 "shall continue in effect until the Commission finds, and . . . notifies the Secretary of the Treasury, that the conditions which led to such exclusion from entry or order no longer exist." *Id.* § 1337(k)(1). A respondent found to have violated section 337 may petition the Commission "for a modification or rescission" of an exclusion order. *Id.* § 1337(k)(2). Accordingly, the Commission's decision on the merits in a modification proceeding "is an appealable final determination under § 1337(c) issued pursuant to § 1337(d) and (f)." *Crucible Materials*, 127 F.3d at 1061 n.2.

As the government admits, "[t]he Commission does not itself enforce its exclusion or its seizure and forfeiture orders, but, rather, directs CBP [i.e., Customs] to exclude from entry into the United States[] merchandise that is subject to a section 337 exclusion order." Defs.' MTD at 3 (citing 19 U.S.C. § 1337(d)). Upon issuance of an exclusion order, the Commission must

"notify the Secretary of the Treasury of its action . . . and upon receipt of such notice, the Secretary shall, through the proper officers, refuse such entry." 19 U.S.C. § 1337(d). Section 337 provides no avenue for review of actions taken by the Secretary of the Treasury or by Customs.

### B.    The underlying Commission investigation

The underlying patent-infringement dispute arose when Caterpillar filed a complaint with the Commission alleging that certain Wirtgen road-construction machines infringed three Caterpillar patents. Caterpillar's '693 patent—the only one relevant here—is directed to a road-milling machine with a "swing leg" that moves between a projected position and a retracted position. After a hearing, a Commission administrative law judge held most of the asserted patent claims invalid but found claim 19 valid and infringed by Wirtgen's W 100 CFi, W 120 CFi, and W 130 CFi milling machines (the "1810 Series machines").

After affirming the ALJ's findings that claim 19 was valid and infringed, the Commission issued a limited exclusion order directed to "[r]oad-construction machines and components thereof that infringe claim 19." Ex. D to Compl. at Ex. 5 ¶ 1. The LEO permits Wirtgen to import products "potentially subject to" the LEO if it certifies that it is "familiar with the terms of this Order" and has "made appropriate inquiry" and states "that, to the best of [its] knowledge and belief, the products being imported are not excluded from entry under paragraph l." *Id.* ¶ 4. "At its discretion, [Customs] may require persons who have provided the certification described in . . . paragraph [4] to furnish such records or analyses as are necessary to substantiate this certification." *Id.*

Wirtgen appealed the Commission's decision to the Federal Circuit, arguing that the LEO should not have issued because claim 19 is invalid and because Caterpillar failed to demonstrate a "domestic industry" (a prerequisite to relief under section 337(a)(2)). That appeal is pending. Wirtgen has twice moved to stay the LEO pending appeal. The Federal Circuit denied Wirtgen's

first motion to stay in October. It has not yet ruled on the second motion.

During the investigation, Wirtgen redesigned its 1810 Series machines to eliminate the feature that the Commission found to meet certain elements of claim 19. Wirtgen presented evidence of its redesigns to the ALJ. The ALJ, however, declined to adjudicate infringement by the redesigned machines because they were "outside the scope of [the] investigation." Compl. ¶ 142. No party challenged this finding, and the Commission ultimately affirmed it.[1]

### C.   Customs' enforcement of the Commission's LEO

After discussions with Wirtgen, Customs initially permitted Wirtgen to import its Redesigned 1810 Series machines. During the latter stages of the investigation, Wirtgen finalized its Redesigned 1810 Series machines and—as contemplated by the LEO's certification provision—began a dialogue with Customs to ensure that they would not be wrongfully detained. Wirtgen's counsel met with Customs officials in Washington, D.C., to demonstrate the operation of the redesigned machines and to demonstrate that they are not subject to the LEO. Compl. ¶¶ 59–67. Before importing the first Redesigned 1810 Series machine in September 2019, Wirtgen alerted Customs that the machine would be arriving at the port of Baltimore. Compl. ¶ 83. As required by the LEO, Wirtgen also provided Customs a certification—signed under penalty of perjury—stating that the redesigned machines were not subject to the LEO and "agree[ing] to furnish to [Customs] such records or analyses as are necessary to substantiate th[e] certification." Compl. ¶ 104; Ex. E to Compl. at Ex. 5. Wirtgen also offered to send a Wirtgen technician to the port to show Customs the machine and demonstrate its operation. Compl. ¶ 86. Customs did not respond to this offer and permitted the machine to be imported. Compl. ¶ 89.

---

[1] The Commission's suggestion that Wirtgen "abandoned" this issue by not petitioning the Commission to review it, Comm'n MTI at 7–8, is puzzling. Wirtgen did not consider this an adverse finding, so Wirtgen could not petition on it.

Wirtgen thereafter imported several Redesigned 1810 Series machines without incident. *Id.* ¶ 24.

In November 2019, however, Customs—without explanation—abruptly reversed course and detained six Redesigned 1810 Series machines. Compl. ¶¶ 93–99. Customs ultimately issued notices of exclusion against them because, Customs said, Wirtgen had failed to prove that the machines do *not* infringe claim 19. Compl. Ex. B at 6. Customs asserted that it would seize any future Redesigned 1810 Series machines imported by Wirtgen. *Id.*

Then, on December 6, 2019—unbeknownst to Wirtgen—Charles Steuart of Customs' IPR Branch sought the Commission's input on Customs' role in enforcing the LEO. He wrote a letter to the Commission asking several questions, including "[w]hether the Commission adjudicated any redesigned versions of Wirtgen's series 1810 milling machines as part of the 1088 investigation." Dec. 6, 2019 Letter from C. Steuart to M. Valentine, Inv. No. 337-TA-1088, EDIS Doc. ID 699429 at 2. The Commission confirmed that it had found Wirtgen's redesigns to be "outside the scope of this investigation." Dec. 12, 2019 Letter from M. Valentine to C. Steuart, Inv. No. 337-TA-1088, EDIS Doc. ID 699436 at 2. The Commission also stated, however, that, "[a]fter the Commission finds a violation of section 337 and remedial orders issue, the burden shifts to the adjudged infringer . . . to demonstrate that similar articles, such as redesigned articles, do not infringe." *Id.* Finally, the Commission noted that "there have been no subsequent proceedings in which Wirtgen's series 1810 milling machines have been found not to infringe claim 19 of the '693 patent." *Id.* Wirtgen did not learn of this correspondence until it was posted on the Commission's electronic docket over a month later.

Wirtgen filed administrative protests in response to the notices of exclusion. *See* 19 U.S.C. § 1514(a)(4) (aggrieved parties may protest "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under [19 U.S.C. §] 1337"); 28 U.S.C. § 1581(a) (providing

for review of protest denials by the Court of International Trade). Wirtgen's protests argued:
(1) that Wirtgen's Redesigned 1810 Series machines do not infringe claim 19; (2) that the LEO
extends only to machines adjudicated by the Commission to infringe; (3) that Customs lacks
statutory authority and appointed officers to determine infringement; (4) that Customs
improperly rejected Wirtgen's certification; and (5) that Customs may not place the burden of
proof on Wirtgen. Compl. ¶127.

Customs refused to address Wirtgen's protests on the merits. Instead, Customs denied the
protests on the ground that "exclusions made by CBP pursuant to the 1088 LEO . . . is not a
subject matter subject to protest." Compl. Ex. G at 24. Customs reasoned that "Wirtgen's
underlying cause of action in the protest stems from the exclusion order issued by the
Commission in the 1088 investigation, rather than CBP's exclusion of merchandise from entry."
*Id.* at 14. "Wirtgen's remedy," Customs stated, "is an appeal as provided by 19 U.S.C. § 1337."
*Id.*

Customs' decision here was unprecedented. To Wirtgen's knowledge, this is the *first time
ever* in the seventy-year existence of the protest system that Customs has asserted that its
exclusion decisions are not reviewable via protest and instead must be challenged in an appeal of
the underlying Commission determination. *See*, *e.g.*, *One World Techs., Inc. v. United States*,
357 F. Supp. 3d 1278 (C.I.T. 2018) (reviewing Customs' denial of a protest related to exclusion
of articles pursuant to an exclusion order); *Emery, Holcombe & Blair v. United States*, 89
U.S.P.Q. 343, 1951 WL 4626, at *1–3 (Cust. Ct. 1951) (same). And the Commission has (until
this case) consistently asserted that litigants should use that system. If a respondent wishes to
"complain about the way Customs is interpreting" an exclusion order, the Commission has said,
"such issues" "must be raised by means of a protest when Customs denies entry, *not through an
appeal of the underlying Commission determination*." ITC *Gamut* Br., 1997 WL 33488038, at

*49 (emphasis added). Indeed, the Commission has asserted that "[i]t is not the mission of the Commission to compensate for any deficiencies that [a respondent] may perceive in Customs' ability to carry out its statutory duties." *Fuji* ITC Br., 2003 WL 24305289, at *36.

### D.     The Commission's modification proceeding

On January 16, 2020, the Commission *sua sponte* initiated a "modification proceeding" pursuant to 19 U.S.C. § 1337(k). The proceeding, according to the Commission notice announcing it, "is addressed to whether Wirgten's redesigned Models XFi and XTi machines infringe claim 19 of the '693 patent and therefore fall within the scope of the LEO, or whether the LEO should be modified to include an explicit exemption for Wirtgen's Model XFi and XTi redesigned machines." Comm'n Notice, Inv. 337-TA-1088, EDIS Doc. ID 699503 at 2. The statute authorizing modifications proceedings, however, does not permit the Commission to hold that new, un-adjudicated products infringe. *See* 19 U.S.C. § 1337(k) (allowing for modification proceedings only to determine whether "the conditions which led to such exclusion from entry or order no longer exist"); *see also infra* Section III.A.2.a.ii.

### E.     Wirtgen's lawsuits

Wirtgen filed this suit in the Court of International Trade challenging Customs' denial of the protests and asking this Court to enjoin Customs from excluding or seizing the six excluded machines. Wirtgen also filed suit in the U.S. District Court for the District of Columbia seeking a permanent injunction against Customs' continued violations of the Administrative Procedure Act and the Appointments and Due Process Clauses of the U.S. Constitution. *Wirtgen America, Inc. v. United States et al.*, Case No. 1:20-cv-00195 (D.D.C. Jan. 24, 2020).

The facts and parties in the CIT action and the present case overlap significantly, but the causes of action and relief sought are distinct. This lawsuit raises claims that Customs acted unlawfully in denying Wirtgen's protests directed to the six excluded machines and seeks

*retrospective* relief directed specifically to those machines. The DC action, in contrast, raises claims that Customs' ongoing procedures for enforcing LEOs are unlawful and unconstitutional and seeks *prospective* relief that would prevent Customs from using those procedures to exclude or seize any Wirtgen machines in the future.

**III.    This Court has jurisdiction to decide Count I under sections 1581(a) and (i)**

**A.    Customs did not exclude Wirtgen's machines pursuant to a final determination of the Commission**

This Court's jurisdiction comes from 28 U.S.C. § 1581(a) and (i) because Wirtgen's complaint "contest[s] the denial of a protest . . . under section 515 of the Tariff Act of 1930" and the propriety of the "administration and enforcement with respect to" Customs' denial of that protest. Compl. ¶¶ 164–187.

Section 514 does not change this conclusion. It provides that "the exclusion of merchandise from entry . . . under any provision of the customs laws, except a determination appealable under section 1337 of this title . . . shall be final and conclusive upon all persons . . . unless a protest is filed in accordance with this section." 19 U.S.C. § 1514(a). Among the grounds subject to protest are "the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title." *Id.* at 1514(a)(4). Wirtgen's protest did not relate to a final determination of the Commission appealable under 19 U.S.C. § 1337(c) because Wirtgen alleged that the excluded machines are not within the scope of the Commission's LEO and because both Wirtgen and Defendants agree that the Commission did not adjudicate the machines to infringe.

Read together, section 1514 and section 1581 state only what this court has long held: that it may review whether Customs properly excluded merchandise pursuant to the LEO but not

whether the Commission properly issued the LEO. Specifically, in *One World Tech.*, this Court held that it had jurisdiction to decide "whether Customs improperly denied One World's protest regarding the one entry of the Redesigned GDO." *One World Tech.*, 357 F. Supp. 3d 1290. "To be clear," the Court added, "One World is not contesting the ITC's infringement findings as applied to the Original GDOs" because "ITC infringement findings are final and conclusive unless appealed to the U.S. Court of Appeals for the Federal Circuit." *Id.* at n.3. Rather, One World contested "Customs' application of the ITC's Limited Exclusion Order to the excluded entry of the Redesigned GDO." *Id.* Accordingly, this Court found jurisdiction under 19 U.S.C. § 1514(a) and 28 U.S.C. § 1581(a) because "One World submitted a timely protest to the exclusion, which *Customs* denied" and "this action contests *Customs' denial* of a protest relating to One World's entry." *Id.* at 1287 (emphasis added). This Court clearly distinguished the jurisdictional differences between challenging the Commission's decision to issue an exclusion order and Customs's decision to exclude a product pursuant to that order.

The Court's analysis in *Atmel*, decided nearly thirty years before *One World*, likewise instructs that this Court has jurisdiction here. In *Atmel*, this Court specifically considered the distinction between jurisdiction to review the ITC's issuance of an exclusion order and Customs' enforcement of that order. This Court noted that "[t]he parties are in agreement that any challenge to ITC's decision is not before this court but that this court may review Customs' enforcement of ITC's decision." *Atmel*, 719 F. Supp. at 1104. This Court then explained that it would have jurisdiction under § 1581 if Customs denied a protest. *Id.* Customs has identified no flaws in the analysis of *One World* and *Atmel*. Section 1514(a)(4)'s exception applies only to the ITC's issuance of an exclusion order; it does not apply to Customs' enforcement of that order.

Because Customs acted outside the scope of its authority pursuant to statute and the LEO, this Court has jurisdiction to review its denial of Wirtgen's protests.

11

B.    **Defendants' jurisdictional arguments improperly assume that Customs acted pursuant to the LEO**

Defendants' arguments for dismissal require this Court to accept the premise that section 1514(a)(4)'s excepting clause removes from this Court's jurisdiction not only final determinations of the Commission, but also Customs' exclusion decisions made *pursuant to* final determinations of the Commission. This argument fails at the outset because it contradicts the plain language of Sections 1514 and 1581 and this Court's clear holdings in *One World* and *Atmel*. But the argument would not help Defendants here even if it were correct.

Defendants say that this Court lacks jurisdiction to review Customs' exclusions under section 1581(a) because "the exclusion of Wirtgen's road construction machines was *indisputably based on* the Commission's limited exclusion order issued pursuant to section 337." Defs.' MTD at 12 (emphasis added). But that premise is far from indisputable. On the contrary, the *core issue* of Wirtgen's complaint is whether Customs acted pursuant to the Commission's limited exclusion order. Defendants' jurisdictional argument thus collapses into the merits.

For purposes of deciding jurisdiction, Wirtgen has alleged that Customs acted outside of its authority under the exclusion order, and the Court must assume that is true. Count I alleges that Customs improperly denied Wirtgen's protests. Compl. ¶185. Those protests argued (1) that Wirtgen's Redesigned 1810 Series machines do not infringe claim 19, (2) that the LEO extends only to machines adjudicated by the Commission to infringe, (3) that Customs lacks statutory authority and appointed officers to determine infringement, (4) that Customs improperly rejected Wirtgen's certification, and (5) that Customs may not place the burden of proof on Wirtgen. Compl. ¶127. Similarly, Wirtgen alleges that because the ALJ "found that redesigned products were outside the scope of the 1088 Investigation" the excluded products "are therefore also outside the scope of the LEO." Compl. ¶¶142–143. Accordingly, Wirtgen's protests alleged that

Customs did *not* exclude Wirtgen's machines pursuant to the Commission's limited exclusion order, therefore whether Customs properly denied Wirtgen's protests is within this Court's jurisdiction.

In ruling on Defendants' motion to dismiss, the Court must assume the merits in Wirtgen's favor. "If, after a review of the pleadings and extrinsic evidence, any conceivable doubt remains whether this Court has jurisdiction to hear this action, the Court will refrain from granting defendant's motion to dismiss." *Takashima U.S.A., Inc. v. United States*, 886 F. Supp. 858, 861 (C.I.T. 1995).

The Federal Circuit's decision in *Nippon Steel Corp. v. United States*, 219 F.3d 1348 (Fed. Cir. 2000), is instructive. This Court's jurisdiction turned "on whether Commerce's initiation of its minor alterations inquiry was proper or beyond the agency's authority." *Id.* at 1353. "[B]oth the merits and the jurisdictional inquiry turn, at least in part, upon the same question: Did Commerce act within its authority in initiating its inquiry." *Id.* Accordingly, jurisdiction "[could not] be resolved without considering and deciding (at least in part)" the merits. *Id.* In such situations, the Court should "bypass[] the jurisdictional question and decid[e] the merits."

Here the Government's motion to dismiss depends on whether Customs, in excluding Wirtgen's unadjudicated redesigned machines, acted within its authority pursuant to the Commission's LEO—the same question that Wirtgen raised on the merits. Consequently, this Court may not simply assume that Customs acted within its authority and dismiss for lack of jurisdiction. Rather, the Court must decide the merits. *See also Amgen Inc. v. Int'l Trade Comm'n*, 902 F.2d 1532, 1536 (Fed. Cir. 1990) (where "the jurisdictional requirements . . . mesh with the factual requirements necessary to prevail on the merits" then "the tribunal should assume jurisdiction and treat (and dismiss on, if necessary) the merits of the case"). Because

13

Wirtgen's complaint alleges facts within the court's jurisdiction, then whether Wirtgen is "later unable to sustain these allegations is not material to the issue of jurisdiction." *Id.*

Defendants essentially concede this point: "To the extent that CBP's ministerial enforcement of the Commission's exclusion order might be subject to any review by this Court, the Court should only consider the legal question of whether CBP properly administered the Commission's exclusion orders as encompassing redesigned goods." Defs.' MTD at 24. Yet Defendants insist that "the facts of the redesigned machines" as to infringement are part of the modification proceeding and "should not be considered here" because Customs did not determine "whether the redesigned 1810 series machines actually infringe claim 19 . . . *nor was it required to do so in order to enforce the Commission's exclusion order.*" Defs.' MTD at 24 (emphasis added). Here, too, Defendants ask the Court to assume the merits against Wirtgen's allegation that Defendants may not exclude machines that neither the Defendants nor the Commission have determined to infringe. Compl. at 23. Accordingly, Defendants' attempt to parse Count I fails to identify a jurisdictional issue that does not require the Court to first agree with Defendants on the merits.

### C.      Congress did not channel review of Customs' exclusion decisions to the Commission

Defendants channeling argument depends on its erroneous construction of 19 U.S.C. § 1514(a)(4) and its incorrect argument for lack of jurisdiction under 28 U.S.C. § 1581(i). *See* Defs.' MTD at 18. Thus, Defendants channeling argument is also wrong. This Court has jurisdiction under section 1581(a) and (i) for the same reasons as discussed above, therefore it is not necessary for the Court to reach Defendants' channeling argument.

Nevertheless, channeling is not appropriate here because (1) Defendants have not identified any statutory authority of the Commission to review Customs' exclusion decisions,

and (2) the Commission has no expertise to review Customs' decisions.

### 1. The Commission lacks statutory authority to review Customs' exclusion decisions

Defendants mistakenly point to the Commission's authority over modification proceedings as evidence "that Congress intended Commission orders to remain in place unless the Commission or the Federal Circuit determines otherwise." Defs.' MTD at 21. Wirtgen's claims here do not relate to modifying or rescinding the Commission's exclusion order; they seek only to determine if Customs acted within its authority in its enforcement of the order. Accordingly, the availability of modification proceedings does not suggest that Congress intended the Commission to review Customs' exclusion decisions.

Nor could a modification proceeding lawfully decide whether Customs acted beyond its authority in excluding Wirtgen's redesigned machines. A modification proceeding decides only whether "the conditions which led to such exclusion from entry or order no longer exist." Defs.' MTD at 21, *citing* 19 U.S.C. § 1337(k)(1). The Commission did not find a violation based on the redesigned machines; it is undisputed that those machines were not adjudicated by the Commission.

Indeed, the recently instituted modification proceeding does not even purport to review whether Customs properly excluded Wirtgen's machines. Instead, it will review only "whether Wirtgen's redesigned XFi and XTi machines infringe claim 19 of the '693 patent." Defs.' MTD at 24, *citing* 85 Fed. Reg. 3,944 (Int'l Trade Comm'n Jan. 23, 2020).

Defendants concede as much: "To the extent that CBP's ministerial enforcement of the Commission's exclusion order might be subject to any review by this Court, the Court should only consider the legal question of whether CBP properly administered the Commission's exclusion orders as encompassing redesigned goods" because the question of infringement is

"already under review in the context of the Commission's ongoing modification proceeding and should not be considered here." Defs.' MTD at 24.

Wirtgen maintains that the modification proceeding is unlawful because such proceedings cannot adjudicate a new product in the first instance. Such product are not among "the conditions which led to such exclusion" under section 1337(k). Regardless, there is no evidence—and Defendants point to none—that the propriety of Customs' actions "are of the type Congress intended to be reviewed within the statutory structure" of Commission modification proceedings. *See Free Enterprise Fund*, 561 U.S. at 489 (alteration omitted) (quoting *Thunder Basin*, 510 U.S. at 207). To the contrary, because Customs determined to exclude Wirtgen's machines as "potentially infringing" because it found that "Wirtgen has not met its burden to prove noninfringement," this Court has jurisdiction to review that decision.

2. **The Commission lacks expertise to review Customs' exclusion decisions**

Defendants point to no specific "expertise" of the Commission to decide whether, in excluding Wirtgen's machines, Customs acted properly. *See* Defs.' MTD at 22. That is because the Commission has none. The Commission has never reviewed an exclusion decision of Customs because it has always—until now—conceded that those are properly reviewed by this Court. Indeed, this Court and its predecessor have been reviewing Customs' exclusion decisions for seventy years. *See*, *e.g.*, *One World Techs., Inc. v. United States*, 357 F. Supp. 3d 1278 (C.I.T. 2018) (reviewing Customs' denial of a protest related to exclusion of articles pursuant to an exclusion order); *Emery, Holcombe & Blair v. United States*, 89 U.S.P.Q. 343, 1951 WL 4626, at *1–3 (Cust. Ct. 1951) (same).

If a respondent wishes to "complain about the way Customs is interpreting" an exclusion order, the Commission has said, "such issues" "must be raised by means of a protest when

16

Customs denies entry, *not through an appeal of the underlying Commission determination*." ITC *Gamut* Br., 1997 WL 33488038, at *49 (emphasis added); *see also* Def.'s Partial Mot. to Dismiss, *Otter Prods. LLC v. United States*, No. 1:14-cv-00328, Dkt. 29 at 5 (C.I.T. Dec. 16, 2014) ("Congress created an express statutory scheme in § 1581(a) for administrative and judicial review of Customs' actions, providing for a protest before Customs and review of protest denials in the CIT.") (quoting *Chemsol, LLC & MC Int'l, LLC v. United States*, 755 F.3d 1345, 1353 (Fed. Cir. 2014)).

The Commission told the Federal Circuit that "Congress has provided an avenue of redress for an importer who believes its goods have been wrongly excluded by Customs pursuant to an exclusion order of the Commission. *See* 19 U.S.C. § 1514(a); 28 U.S.C. § 1581(a)." Appellee Br., *Otter Prods., LLC v. Int'l Trade Comm'n*, 2015 WL 1396719, at *28 (Fed. Cir. Mar. 16, 2015); *see also* Appellee Br., *Altima Commc'ns, Inc. v. Int'l Trade Comm'n*, 2002 WL 32814194, at *53 (Fed. Cir. June 27, 2002) ("Even if Broadcom had shown actual exclusion by Customs of its discrete products . . . such challenges should be made by protest to Customs pursuant to 19 U.S.C. § 1514 . . . ."); Appellee Br., *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 2006 WL 5486628, at *75–76 (Fed. Cir. Feb. 6, 2006) ("[T]o the extent Appellants imply that their handsets containing non-infringing chips will mistakenly be excluded, Congress has provided an avenue for challenging improper exclusion by a protest to Customs pursuant to 19 U.S.C. § 1514 . . . ."); *see Certain Marine Sonar Imaging Devices*, Inv. No. 337-TA-921, Comm'n Op. (ITC Oct. 20, 2016); *Certain Digital Video Receivers*, Inv. No. 337-TA-1001, Comm'n Op. (ITC Dec. 6, 2017); *Certain Inkjet Ink Cartridges*, Inv. No. 337-TA-723, Notice of Comm'n Determination (ITC Aug. 26, 2015).

Indeed, the Commission has asserted that "[i]t is not the mission of the Commission to compensate for any deficiencies that [a respondent] may perceive in Customs' ability to carry out

17

its statutory duties." *Fuji* ITC Br., 2003 WL 24305289, at *36.

The Defendants and the Commission likewise have consistently argued that the Court of International Trade has jurisdiction to hear appeals from protest denials even when related to exclusion decisions. *See, e.g.*, Defs.' Mot. to Dismiss, *One World Techs., Inc. v. United States*, No. 19-00017, Dkt. 59 at 20 (C.I.T. Feb. 15, 2019) (stating that the respondent was "properly challenging CBP's exclusion of an earlier entry of . . . merchandise pursuant to section 1581(a)" in the Court of International Trade); Int'l Trade Comm'n's Partial Mot. to Dismiss, *One World Techs., Inc. v. United States*, No. 18-0200, Dkt. 44 at 7–8 (C.I.T. Oct. 12, 2018) ("[S]ection 1581(a) gives this Court [the Court of International Trade] jurisdiction only over One World's claim contesting Customs' denial of its protest pursuant to 19 U.S.C. § 1515.").

Defendants concede this prior interpretation of section 1514(a)(4), but assert that "our understanding has developed such that we can identify these cases as backdoor challenges to a Commission determination." Defs.' MTD at 12. Again, this argument improperly asks this Court to assume that Defendants are right on the merits and that Customs acted pursuant to the LEO.

Defendants' allegedly new understanding regarding section 1514(a)(4) came in response to Wirtgen's protests alleging that Defendants lack statutory and constitutional authority to determine patent infringement and to exclude unadjudicated products. Compl. ¶127. Such a "convenient litigating position" is entitled to no weight as this Court interprets section 1514(a)(4). *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988) (where agency advanced a new interpretation of a statute "contrary to the narrow view of that provision advocated in past cases" . . . [d]eference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.")

Lastly, Defendants' policy arguments have no bearing here. *See* Defs.' MTD at 22–23. Caterpillar's inability to participate in this proceeding is irrelevant. Caterpillar may at any time

file a new complaint at the Commission if it believes Wirtgen's redesigned products infringe any of its patents. And Caterpillar suffers no prejudice because it will not be bound by issue preclusion where it was not represented. Regardless, Wirtgen has alleged that Customs cannot exclude unadjudicated products, and that issue is independent of Caterpillar's patent. Finally, there is no risk of inconsistent results because both this Court's decision and any Commission determination will be reviewable by the Federal Circuit.

## IV.     This Court has jurisdiction over Count II under section 1581(i)(4)

This Court has jurisdiction, for the reasons discussed above, to decide whether Customs improperly excluded Wirtgen's redesigned machines and improperly denied Wirtgen's protests. As a prerequisite to the exclusion of Wirtgen's machines, Customs must issue a notice of detention that provides certain information required by 19 U.S.C. § 1499(c)(2). Wirtgen has alleged that Customs did not provide that information. Compl. ¶¶ 186–187. This Court has jurisdiction under section 1581(i)(4) to review whether Customs' administration and enforcement of its exclusion decisions complied with its statutory obligations.

Defendants' arguments for dismissing Count II depend on the same faulty interpretation of 1581(a) and 1514(a)(4) as Defendants' arguments for dismissing Count I. *See* Defs.' MTD at 28 ("As we demonstrated above, Congress channeled challenges to CBP's final determinations to exclude merchandise in this context to the Commission and, if necessary, to the Federal Circuit."). Accordingly, if this Court has jurisdiction over Count I under 1581(a) and (i), then it has jurisdiction over Count II under 1581(i).

## V.     Conclusion

The Court should deny Defendants' motion to dismiss.

Date: February 18, 2020

Respectfully submitted,

/s/ Daniel E. Yonan
Daniel E. Yonan
Dallin Glenn
Donald R. Banowit
Kristina Caggiano Kelly
STERNE, KESSLER, GOLDSTEIN & FOX,
P.L.L.C.
1100 New York Ave., N.W., Suite 600
Washington, DC 20005-3934
Telephone No.: (202) 371-2600
Facsimile No.: (202) 371-2540
dyonan@sternekessler.com
dglenn@sternekessler.com
dbanowit@sternekessler.com
kckelly@sternekessler.com

*Counsel for Plaintiff Wirtgen America, Inc.*