**Slip Op. 20-29**

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **WIRTGEN AMERICA, INC.**<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>**UNITED STATES,** *et al.*<br><br>　　　　　　Defendants. | **Court No. 20-00027**<br><br>**Before: Timothy C. Stanceu, Chief Judge** |

### OPINION AND ORDER

[Denying defendants' motion to dismiss for lack of subject matter jurisdiction and the U.S. International Trade Commission's motion to intervene as a party defendant]

Dated:  March 4, 2020

*Daniel E. Yonan*, Sterne, Kessler, Goldstein & Fox, PLLC, New York, New York, for plaintiff.  With him on the brief were *Dallin Glenn*, *Donald R. Banowit*, and *Kristina Caggiano Kelly*.

*Guy R. Eddon*, Trial Attorney and *Patricia M. McCarthy*, Assistant Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, New York, New York, for the United States.  With them on the brief were *Joseph H. Hunt*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Justin R. Miller*, Assistant Director, and *Marcella Powell*, *Jason M. Kenner*, and *Edward F. Kenny*, Senior Trial Counsel.

Stanceu, Chief Judge:  Plaintiff Wirtgen America, Inc. ("Wirtgen") brought this action on January 30, 2020 to contest the exclusion from entry of its merchandise, which consists of six road-milling machines that were imported on three recent entries.  U.S. Customs and Border Protection ("Customs" or "CBP"), relying upon an exclusion order of the United States International Trade Commission (the "ITC" or the "Commission"), has excluded the six machines from entry for potential patent infringement.  Compl. ¶¶ 93, 95, 99 (Jan. 30, 2020), ECF No. 7.

Before the court are two motions.  Defendants move to dismiss this action for lack of subject matter jurisdiction.  Defs.' Mot. to Dismiss (Feb. 12, 2020), ECF No. 27 ("Defs.' Mot.").  The ITC moves for defendant-intervenor status.  Mot. of the U.S. Int'l Trade Comm'n for Leave to Intervene as a Party Def. (Feb. 5, 2020), ECF No. 19 ("ITC's Mot.").  For the reasons set forth below, the court denies both motions.

## I. BACKGROUND

The facts pertinent to the issue of subject matter jurisdiction, summarized below, are as set forth in the complaint and attachments thereto and have not been contested by defendants.

### A. The Excluded Merchandise at Issue in this Litigation

Wirtgen is the importer and exclusive U.S. distributor for products manufactured by the Wirtgen Group companies of Germany.  Among the products Wirtgen imports and distributes are Wirtgen-branded road-milling machines.  Compl. ¶ 9.  The six road-milling machines now being held by Customs following detention and exclusion from entry are the subject of this litigation.  Five of the machines were imported at the port of Brunswick, Georgia on entries made on November 18 and 21, 2019.  Summons (Jan. 30, 2020), ECF No. 1.  A sixth machine was entered at the port of Baltimore, Maryland on December 3, 2019.  Summons (Jan. 30, 2020), ECF No. 2.  After detentions, Customs excluded the five machines entered at Brunswick on December 18, 2019 and excluded the machine entered at Baltimore on December 27, 2019.  Compl. ¶¶ 105, 117.

### B. The Section 337 Investigation

Three models of Wirtgen's road-milling machines (Model Nos. W 100 CFi, W 120 CFi and W 130 CFi; collectively, the "1810 Series" machines) were subject to an investigation conducted by the ITC under section 337 of the Tariff Act of 1930 ("section 337"), 19 U.S.C.

§ 1337, into alleged patent infringement.  The investigation, initiated in November 2017 upon a

complaint filed by Caterpillar, Inc. and Caterpillar Paving Products, Inc. (collectively,

"Caterpillar"), culminated in the ITC's finding of a violation of section 337 and resulted in the

issuance of a Limited Exclusion Order ("LEO") and certain cease and desist orders barring

Wirtgen from importing the 1810 Series machines into the United States.  *See Certain Road*

*Construction Machines and Components Thereof; Notice of Commission Final Determination*

*Finding a Section 337 Violation; Issuance of a Limited Exclusion Order and a Cease and Desist*

*Order; Termination of the Investigation*, USITC Inv. No. 337-TA-1088 (June 27, 2019),

*available at* 2019 WL 2724105 ("*ITC Final Determination*").  Wirtgen has appealed the ITC's

final determination to the Court of Appeals for the Federal Circuit.  Compl. ¶ 34.

In its section 337 investigation, the ITC determined that the 1810 Series machines

infringed claim 19 of U.S. Patent No. 7,140,693 (the "'693 patent").  *Id.* ¶¶ 30–33.

### C. The Redesigned 1810 Series Machines

On February 14, 2019, the administrative law judge ("ALJ") conducting the section 337

investigation issued a Final Initial Determination that found all asserted claims of the '693

patent, other than claim 19, to be invalid and found a violation of section 337 based on a finding

that the 1810 Series machines infringed claim 19 of that patent.  *Id.* ¶¶ 29–30.  "The Commission

affirmed the administrative law judge's determination in relevant part and issued the

recommended remedies against Wirtgen's 1810 Series machines."  *Id.* ¶ 33.

In the Final Initial Determination, the administrative law judge "found that the swing leg

on these machines rotates by an actuator rotating a portion of the lifting column on which the

swing leg is mounted, as recited in claim 19."  *Id.* ¶ 31.  During the pendency of proceedings

before the ITC, Wirtgen redesigned the "swing leg" mechanism of 1810 Series machines with

the objective of avoiding infringement of claim 19 of the '693 patent. *Id.* ¶¶ 36–40, 45–58. The administrative law judge declined to determine whether or not Wirtgen's redesigned road-milling machines (the "Redesigned 1810 Series" machines) infringed the '693 patent, concluding that these machines "are outside the scope of [the] investigation" and "not ripe." *Id.* ¶¶ 42–43. "The Commission adopted this portion of the ALJ's determination, making it final." *Id.* ¶ 44.

Without mentioning the Redesigned 1810 Series machines, the Limited Exclusion Order excluded from entry "[r]oad construction machines . . . that infringe claim 19 of the '693 patent . . . ." Limited Exclusion Order ¶ 1, USITC Inv. No. 337-TA-1088 (June 27, 2019) ("LEO"), Statement of Undisputed Material Facts in Support of Wirtgen's Mot. for Summ. J. Ex. 6 (Feb. 24, 2020), ECF No. 44.

Wirtgen imported several Redesigned 1810 Series machines between September 9, 2019 and December 13, 2019 that Customs permitted to enter the United States. Compl. ¶¶ 88, 91. Nevertheless, on November 18 and 21, 2019, Customs detained five Redesigned 1810 Series machines at the port of Brunswick, *id.* ¶ 95, and on December 3, 2019, detained one Redesigned 1810 Series machine at the port of Baltimore, Maryland. *Id.* ¶ 99. The exclusions from entry of all six Redesigned 1810 Series machines followed these detentions. *Id.* ¶¶ 105, 117.

### D. Protests, Protest Denials, and Summonses

On December 24, 2019, Wirtgen filed with Customs a protest of the exclusions of the machines entered at Brunswick, Georgia (Entry Nos. SCS-73730948 and SCS-75549544). *Id.* ¶ 119. Customs denied this protest on January 21, 2020. *Id.* ¶ 128. On December 31, 2019, Wirtgen filed a protest of the exclusion of the machine entered at Baltimore (Entry No. SCS-77482413). *Id.* ¶ 125. Customs denied this protest on January 27, 2020. *Id.* ¶ 129.

On a summons filed in this Court on January 30, 2020, Wirtgen contested the denial of the first protest.  Summons (Jan. 30, 2020), ECF No. 1.  A second summons, filed on the same day, contested the denial of the second protest.  Summons (Jan. 30, 2020), ECF No. 2.

### E. Related Litigation

On July 19, 2017, prior to the filing of Caterpillar's complaint under section 337, Wirtgen filed a complaint with the Commission alleging violations of section 337 caused by the importation of certain of Caterpillar's road construction machines.  Defs.' Mot. 5.  The ITC initiated a section 337 investigation against Caterpillar, Inv. No. 337-TA-1067, that also resulted in a limited exclusion order.  *Id.*  Both limited exclusion orders are before the Court of Appeals for the Federal Circuit in a consolidated appeal, Case No. 19-2306.  *Id.*

On December 13, 2019, the Patent Trial and Appeal Board ("PTAB"), in response to a petition by Wirtgen, issued a Final Written Decision determining that all challenged claims, including claim 19, of the '693 patent are unpatentable as obvious.  Compl. ¶ 35.

Before commencing this case with the filing of two summonses on January 30, 2020, Wirtgen sought dialogue with Customs to establish that the Redesigned 1810 Series machines did not violate claim 19 of the '693 patent.  Wirtgen's Opp'n to Defs.' Mot. to Dismiss 6–8 (Feb. 18, 2020), ECF No. 37.  On January 16, 2020, the Commission initiated a "modification proceeding."  ITC Inv. No. 337-TA-1088M; *see* 85 Fed. Reg. 3944 (Int'l Trade Comm. Jan. 23, 2020).  The proceeding is ongoing.  Defs.' Mot. 8.

Wirtgen commenced an action in the District Court for the District of Columbia, *Wirtgen Am., Inc. v. United States*, Case No. 20-cv-00195, alleging that the exclusions of the Redesigned 1810 Series machines by Customs violated the Administrative Procedure Act, the Appointments Clause of the U.S. Constitution, and the right to procedural due process.  Compl. ¶ 7.

## II. DISCUSSION

## A. Subject Matter Jurisdiction

Plaintiff asserts jurisdiction according to 28 U.S.C. § 1581(a) and (i).  *Id.* ¶ 6.

Jurisdiction does not exist under subsection (i) when jurisdiction according to another subsection

of § 1581 is available unless the remedy provided by that other subsection would be "manifestly

inadequate."  *Int'l Custom Prods., Inc. v. United States*, 791 F.3d 1329, 1332 (Fed. Cir. 2015)

(quoting *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir. 1987)).  The court,

therefore, considers whether jurisdiction exists according to 28 U.S.C. § 1581(a), under which

the Court of International Trade has exclusive jurisdiction of an action to contest the denial of a

protest under section 515 of the Tariff Act, 19 U.S.C. § 1515.  If the court determines jurisdiction

exists according to 28 U.S.C. § 1581(a), that determination also resolves the issue of the

Commission's proposed intervention.  As provided in the Customs Courts Act, 28 U.S.C.

§ 2631(j)(1)(A), "no person may intervene in a civil action under section 515 . . . of the Tariff

Act of 1930."

Jurisdiction under 28 U.S.C. § 1581(a) requires a timely protest of a decision of Customs

that may be protested under 19 U.S.C. § 1514(a), a denial of that protest, *see* 19 U.S.C. § 1515,

and the timely filing of a summons to commence an action to contest the denial of the protest.

19 U.S.C. § 1514(a); 28 U.S.C. §§ 2632(b), 2636(a).  Based on the jurisdictional facts that are

pled in the complaint and uncontested by defendants in moving to dismiss, the court concludes

that subject matter jurisdiction of this action exists according to 28 U.S.C. § 1581(a).  On that

basis, the court denies both of the motions pending before it.

### 1. Wirtgen Protested a Decision of Customs to Exclude the Merchandise from Entry

As a general matter, the exclusion of merchandise from entry is a decision that may be protested. 19 U.S.C. §§ 1499, 1514(a)(4). But because protests may be filed only to contest "decisions *of the Customs Service*," *id.* § 1514(a) (emphasis added), a decision may not be protested when Customs is merely taking action to effectuate a decision of another agency. *See Mitsubishi Elecs. America, Inc. v. United States*, 44 F.3d 973, 977 (Fed. Cir. 1994).

Defendants argue that "[t]his case should be dismissed because there is no right to review in this Court for challenges to CBP's enforcement of exclusion orders that solely implement determinations of the ITC under section 1337." Defs.' Reply Mem. in Supp. of their Mot. to Dismiss 2 (Feb. 24, 2020), ECF No. 39 ("Defs.' Reply"). Defendants add that "CBP's actions were wholly derivative of the ITC and, therefore, Wirtgen's grievance is with the Commission, not with Customs." *Id.*

Defendants are correct that a Customs action that solely implements an ITC determination under 19 U.S.C. § 1337 may not be protested. But according to the uncontested facts as pled in the complaint, the exclusions giving rise to this dispute do not fall into this category and, contrary to defendants' characterization, are not "wholly derivative of the ITC."

While ordering the exclusion from entry of "[r]oad construction machines . . . that infringe claim 19 of the '693 patent . . . ," LEO ¶ 1, the Limited Exclusion Order does not on its face address the Redesigned 1810 Series machines.[1]  Moreover, Wirtgen alleges in its complaint

---

[1] The Limited Exclusion Order ("LEO") provided for Customs to allow importation of machines "potentially subject to this Order" upon satisfactory certification that such machines are not excluded by the LEO. Limited Exclusion Order ¶ 4, USITC Inv. No. 337-TA-1088 (June 27, 2019), Statement of Undisputed Material Facts in Support of Wirtgen's Mot. for Summ. J. Ex. 6 (Feb. 24, 2020), ECF No. 44. Customs noted for Wirtgen its practice of not accepting such a certification "absent a determination by CBP or the Commission that the article (continued…)

that the Commission adopted the portion of the decision of the administrative law judge that

declined to decide the question of whether the Redesigned 1810 Series machines infringe

claim 19, on the ground that the redesigned machines were not within the scope of the section

337 investigation.  Compl. ¶¶ 42–44.  Thus, according to the facts Wirtgen alleges, the ITC did

not direct Customs to exclude the six Redesigned 1810 Series machines from entry, and,

accordingly, the decision to exclude the six Redesigned 1810 Series machines was made by

Customs.  That decision, and not the Limited Exclusion Order, is contested in this litigation.  *See*

Compl. ¶ 172.

 Relying on the notices of exclusion Customs sent to Wirtgen, defendants contend that in

excluding the six redesigned machines from entry, "CBP merely effectuated the Commission's

administrative practice in excluding Wirtgen's redesigned merchandise.  This practice is

reflected by the administrative documents in this case."  Defs.' Reply 9.  In the December 18,

2019 notice of exclusion, which defendants cite specifically, Customs interpreted the Limited

Exclusion Order as "not limited to the specific products that were before the Commission during

the investigation, but instead extends to all products, including any new or redesigned products

. . . that infringe the relevant intellectual property."  Compl. Ex. B at 2 (December 18, 2019

notice informing Wirtgen of the exclusion of the five machines entered at Brunswick, Georgia

(citing *Certain Optical Disk Controller Chips and Chipsets*, Inv. No. 337-TA-506, Comm'n Op.

at 56–57, USITC Pub. 3935 (July 2007))).

 Defendants' argument is misguided.  The reasoning by which Customs decided to

exclude the merchandise from entry is not relevant to the question of whether subject matter

_____

(continued…)

is not subject to the exclusion order."  Compl., Ex. B at 5 (Jan. 30, 2020), ECF No. 7 (notice of
exclusion).

jurisdiction exists in this case. Here, Wirtgen contests the decision by Customs to exclude that merchandise, an issue that will be adjudicated *de novo* by the court rather than according to the grounds upon which Customs made the exclusions. *See* 28 U.S.C. § 2640(a)(1). The question pertinent to subject matter jurisdiction is whether Customs acted on its own to exclude the merchandise or was directed by the ITC to do so. As discussed above, plaintiff has pled facts according to which Customs excluded the merchandise without being directed to do so by the Commission.

Concerning "administrative documents," defendants also rely on a Customs headquarters ruling addressing Wirtgen's protest, HQ H308232 (Jan. 21, 2020), Compl. Ex. G, and on a December 12, 2019 letter to Customs from the Commission's Assistant General Counsel for Section 337, which responded to certain questions Customs had posed related to the protest proceeding, Defs.' Reply Ex. 1 (Letter of Dec. 12, 2019 from Megan M. Valentine to Charles Steuart, Chief, IPR & Restricted Merchandise Branch, U.S. Customs and Border Protection). Defs.' Reply 8–9. These documents also are irrelevant to the question of jurisdiction. The letter from the ITC's Assistant General Counsel is not a decision of the Commission, and even if it were, it still would be irrelevant because it does not direct Customs to exclude the merchandise at issue. The January 21, 2020 headquarters ruling states the reasoning by which Customs denied the protest (concluding that the exclusion of the merchandise from entry was not a protestable decision). Just as the reasons why Customs excluded the merchandise are not relevant to the issue of jurisdiction, neither are the reasons why Customs denied the protest. Customs headquarters ruling HQ H308232, therefore, does not bear on the question of subject matter jurisdiction over this action.

**2. The Exception in 19 U.S.C. § 1514(a)(4) Does Not Apply in this Case**

The Tariff Act provides, in pertinent part, that a protest may be filed to contest "decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to—. . . the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, *except a determination appealable under section 1337 of this title* [section 337, 19 U.S.C. § 1337]." 19 U.S.C. § 1514(a)(4) (emphasis added). The question as to jurisdiction, therefore, is whether the decisions made on December 17, 2019 (as to the five machines entered at Brunswick) and December 27, 2019 (as to the machine entered at Baltimore) to exclude the six Redesigned 1810 Series machines from entry were "determinations" that were "appealable" under section 337.

Congress made several categories of determinations appealable under section 337. All are appealable to the Court of Appeals for the Federal Circuit. Specifically, under 19 U.S.C. § 1337(c), "[a]ny person adversely affected by a final determination of the Commission under subsection (d), (e), (f), or (g)" of § 1337 "may appeal such determination, within 60 days after the determination becomes final, to the United States Court of Appeals for the Federal Circuit for review . . . ." The merchandise exclusions at issue in this litigation do not fall within any of those categories.

As is pertinent here, subsection (d) of § 1337 provides for a limited (in subparagraph (1)) or a general (in subparagraph (2)) order for the exclusion from entry into the United States of "the articles concerned" if the Commission "determines, as a result of an investigation under this section, that there is a violation of this section." Wirtgen is not contesting the Limited Exclusion Order in this action. Rather, it claims that Customs excluded merchandise to which the LEO did not apply. Compl. ¶ 172 ("Customs' exclusion of the Redesigned 1810 Series machines is

wrongful because these products do not infringe claim 19 of the '693 patent, and are therefore outside the scope of the LEO."). It alleges facts in support of that claim. *See, e.g., id.* ¶¶ 36–40, 45–58 (alleging that Wirtgen redesigned the 1810 Series machines so that they would not infringe claim 19), ¶¶ 69–82 (alleging facts in support of claim of non-infringement of claim 19). Because a claim that Customs wrongfully excluded the merchandise giving rise to this dispute is not the same as a claim that the Limited Exclusion Order is unlawful, subsection (d) of 19 U.S.C. § 1337 is not a basis upon which the court may dismiss this action for lack of jurisdiction. Nor is subsection (e), (f) or (g) a basis for dismissal.[2]

Relying on 19 U.S.C. § 1514(a)(4), defendants argue that this Court lacks jurisdiction because "Congress expressly provided that an exclusion *based on* a section 337 determination is not protestable." Defs.' Mot. 11 (emphasis added). Similarly, defendants argue that the exception to protestability in 19 U.S.C. § 1514(a)(4) applies to "exclusions that were made *because of* a 'determination appealable under' 19 U.S.C. § 1337." Defs.' Reply 4 (emphasis added). They argue, similarly, that section 337 "explicitly divests this Court of jurisdiction by channeling *all* review of section 337 matters to the Commission and the [Court of Appeals for the] Federal Circuit." Defs.' Mot. 18.

These arguments misstate § 1514(a)(4). The provision makes protestable a "decision" by Customs to exclude merchandise "under any provision of the customs laws, except a *determination appealable* under section 1337 . . . ." 19 U.S.C. § 1514(a)(4) (emphasis added). Defendants' reading, which does not give full effect to the word "appealable," impermissibly

---

[2] Subsection (e) is not pertinent here because it applies to preliminary exclusions of articles from entry during the pendency of a section 337 investigation. Subsection (f) applies to a cease and desist order, which is not being contested here. Finally, subsection (g) is inapplicable because it applies in the event of a default by a person against whom a complaint is filed under section 337.

would enlarge the exception to encompass any determination that would not have been made *but for* a section 337 exclusion order. Had Congress intended to create a broader exception for any Customs determination on section 337 "matters," or for any decision Customs makes "because of" a section 337 exclusion order, or concludes is "based on a section 337 determination," Congress would have so provided. Moreover, it is a canon of statutory construction that exceptions to a generally-expressed principle are to be read narrowly. *See Comm'r v. Clark*, 489 U.S. 726, 739 (1989).

       In further support of their position, defendants rely on certain legislative history of the Customs Courts Act of 1980, which enacted 19 U.S.C. § 1514(a)(4). Defendants point out that "[i]n technical comments made part of the Commission's statement before Congress on the proposed legislation, the Commission proposed adding 'except actions otherwise appealable under section 337 of the Tariff Act of 1930' after the phrase 'any provisions of the customs laws.'" Defs.' Reply 6 (citing *Customs Courts Act of 1979: Hearing on S. 1654 Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary*, 96th Cong. 25 (1979) (technical comments of the U.S. International Trade Comm'n), *reprinted in* COMM. ON THE JUDICIARY, 96TH CONG., LEGISLATIVE HISTORY OF THE CUSTOMS COURTS ACT OF 1980, VOL. 2 at 25. Defendants add that "[t]he Commission specified the reason for this proposed change was that '[e]xclusion of merchandise from entry is a remedy under section 337. Section 337 determinations are reviewable exclusively by the U.S. Court of Customs and Patent Appeals.'"[3] *Id.*

---

       [3] The pertinent text of the U.S. International Trade Commission's technical comments was as follows:

(continued…)

The technical amendment sought by the ITC, as reflected in the statute as enacted, does not establish the premise of the government's argument that jurisdiction is lacking over this case. The exception Congress incorporated into 19 U.S.C. § 1514(a)(4) effectuates the jurisdictional limitation for which the ITC identified a need in its comments, i.e., that "[s]ection 337 determinations," including specifically exclusions from entry that are a remedy under section 337, "are reviewable exclusively by the U.S. Court of Customs and Patent Appeals." According to facts pled in the complaint, which defendants do not contest, the exclusions from entry giving rise to this action were not a remedy effectuated under section 337 but instead were a remedy effectuated by Customs without an underlying directive from the Commission.

In summary, according to the uncontested facts, nothing in subsection (c) of § 1337 made appealable to the Court of Appeals for the Federal Circuit the decision by Customs to exclude from entry the six Redesigned 1810 Series machines. Therefore, the exception in 19 U.S.C. § 1514(a)(4) does not apply, and that decision was one that could be protested.

Arguing that "Congress has provided a specific path for importers to challenge the Commission's exclusion orders and to establish that redesigned products no longer violate an exclusion order," defendants characterize challenges to exclusions such as this action as

---

(continued…)
    2. Page 5, lines 5 and 6: After the phrase "any provisions of the customs laws" on line 6, add, "except actions otherwise appealable under section 337 of the Tariff Act of 1930."
    *Reason for the Change.*—Exclusion of merchandise from entry is a remedy under section 337. Section 337 determinations are reviewable exclusively by the U.S. Court of Customs and Patent Appeals.

*Customs Courts Act of 1979: Hearing on S. 1654 Before the Subcomm. on Improvements in Judicial Machinery of the S. Comm. on the Judiciary*, 96th Cong. 25 (1979) (technical comments of the U.S. International Trade Comm'n), *reprinted in* COMM. ON THE JUDICIARY, 96TH CONG., LEGISLATIVE HISTORY OF THE CUSTOMS COURTS ACT OF 1980, VOL. 2 at 25.

"backdoor challenges to a Commission determination." Defs.' Mot. 15. This argument is flawed

in two respects. First, as discussed above, Wirtgen is not raising before this Court a challenge to

the Limited Exclusion Order or the findings upon which the LEO was issued. *See* Compl. ¶ 172.

Second, in suggesting that Wirtgen has a path to establish before the Commission that its

"redesigned products no longer violate an exclusion order" (an apparent reference to the

"modification" procedures of 19 U.S.C. § 1337(k)(2)), defendants' argument, by postulating that

entry of the Redesigned 1810 Series machines would violate the Limited Exclusion Order, delves

into the merits by presuming the answer to the issue in dispute.

Defendants maintain, further, that the Customs Regulations render the exclusions at issue

non-protestable and that Wirtgen failed to challenge the lawfulness of those regulations. Defs.'

Mot. 17 (quoting 19 C.F.R. § 174.11). This argument misinterprets the Customs Regulations and

presumes, invalidly, that those regulations somehow could alter this Court's jurisdiction.

Contrary to defendants' interpretation, the Customs Regulations mirror the statute in making

"subject to protest" exclusions of merchandise "under any provision of the customs laws except a

determination that may be appealed under 19 U.S.C. 1337." 19 C.F.R. § 174.11. Had these

regulations attempted to broaden the exception in 19 U.S.C. § 1514(a)(4), they would be ruled

invalid, as no agency regulation may enlarge or limit the jurisdiction Congress grants to this or

any Article III court. *See Carlyle Towers Condominium Ass'n v. F.D.I.C.*, 170 F.3d 301, 310 (2d

Cir. 1999) ("*Carlyle Towers*") ("[I]t is 'axiomatic' that agencies can neither grant nor curtail

federal court jurisdiction." (quoting *Miller v. FCC*, 66 F.3d 1140, 1144 (11th Cir. 1995))).

### 3. This Action Involves Two Protests that Were "Denied" for Purposes of the Tariff Act

Wirtgen's summonses and complaint indicate that Customs denied the protest relating to

the Brunswick machines on January 21, 2020 and denied the protest relating to the Baltimore

machine on January 27, 2020, each on the basis that "the protest does not raise a protestable

issue." Summonses; Compl. ¶¶ 128–130 (internal brackets omitted).[4] The protest denials were

followed by timely summonses.[5]

### 4. Congress Did Not "Channel" this Litigation to the Court of Appeals for the Federal Circuit or to the Commission

Defendants' argument that review of exclusions such as those challenged here are

"channeled" to the Commission is also unconvincing. The judicial review scheme established by

19 U.S.C. § 1514(a)(4), when read in conjunction with section 337, provides for judicial review

of exclusions from entry related to section 337 in one of two Article III courts, the Court of

Appeals for the Federal Circuit or this Court. Defendants' interpretation of the mechanisms for

review would place review of some exclusion determinations of one agency (Customs) in

---

[4] As a general matter, it is possible for Customs to "return" a protest but also indicate that the act of returning it is not a "denial." *See Zojirushi Am. Corp. v. United States*, 40 CIT __, __, 180 F. Supp. 3d 1354, 1365–67 (2016) (protest erroneously returned by Customs as non-protestable held not to be "denied" pursuant to 19 U.S.C. § 1515 but eligible for deemed denial following filing of a request for accelerated disposition under 19 U.S.C. § 1514(b)). In this case, Customs decided that the protests were to be "denied" *because* the decision involved was, according to Customs, not one that could be protested. Compl. Ex. G at 2. The factual situation giving rise to *Zojirushi America Corp.*, therefore, did not exist in this case.

Even if the January 21 and 27, 2020 actions by Customs had not qualified as protest denials, another provision of the Tariff Act would have effected a "deemed" denial of Wirtgen's two protests. By operation of section 499(c)(5) of the Tariff Act, protests pending before Customs regarding decisions to exclude merchandise that are not allowed or denied (in whole or in part) "*before* the 30th day after the day on which the protest was filed shall be treated as having been denied on such 30th day." 19 U.S.C. § 1499(c)(5) (emphasis added); *see* 19 C.F.R. § 174.21(b). If the Customs "denials" had not been actual denials, the protest as to the Brunswick entries would have been deemed denied as of 12:01 a.m. on January 23, 2020 by operation of 19 U.S.C. § 1499(c)(5), and, similarly, the protest regarding exclusion of the Baltimore machine would have been deemed denied as of 12:01 a.m. on January 30, 2020.

[5] *See* 28 U.S.C. § 2636(a) (imposing 180-day time limit on commencement of an action to contest a protest denial).

another non-judicial body, the ITC, contrary to the general intent of Congress that decisions

Customs makes to exclude merchandise from entry would be reviewable in an Article III court.

In support of their "channeling" argument, defendants rely on *Elgin v. Dept. of Treasury*,

567 U.S. 1 (2012) and *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).  Defs.' Mot. 18.

These cases, each of which held that the jurisdiction sought was not available in a U.S. district

court, are not controlling on the jurisdictional issue presented here.  *Elgin* held that the statutory

scheme for judicial review in the Civil Service Reform Act of 1978, under which initial review

of an adverse employment action is conducted by the Merit Systems Protection Board, with

judicial review vested in the Court of Appeals for the Federal Circuit, precluded an action in a

district court seeking judicial review of a constitutional claim.  567 U.S. at 23.  *Thunder Basin*

*Coal Co.* held that the statutory scheme for review Congress established for administrative

actions taken under the Federal Mine Safety and Health Amendments Act of 1977, which

provided for post-administrative judicial review in federal appellate courts, prevented a district

court from exercising subject matter jurisdiction over a pre-enforcement challenge to the Act.

510 U.S. at 218.  Both cases turned on whether congressional intent to place initial review in an

administrative agency, with judicial review in a particular federal court or courts, was "fairly

discernible in the statutory scheme."  *Id.* at 207 (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S.

340, 351 (1984).

Here, it is not discernible from the statutory scheme that Congress intended to channel

initial review of every section-337-related exclusion determination of Customs to the ITC, with

appeal therefrom to the Court of Appeals for the Federal Circuit.  Instead, Congress established a

bifurcated system of judicial review in 19 U.S.C. §§ 1337(c) and 1514(a)(4).  Only those

determinations Congress, in section 337, made directly appealable from the Commission to the

Court of Appeals for the Federal Circuit are ineligible for protest. Those made by Customs on its own initiative that do not fall within the categories of ITC actions eligible for direct review in the Court of Appeals for the Federal Circuit are to be first adjudicated in the Court of International Trade before review is available in the appellate court.

Defendants argue that adjudication of an action such as this one in the Court of International Trade is inappropriate because it does not allow for participation by the patent holder or the ITC, neither of whom may intervene. Defs.' Mot. 22. At most, this is an argument for what Congress *could* have done, or what defendants believe Congress *should* have done, in crafting a scheme for judicial review. The court instead must decide the jurisdictional question on the basis of what Congress actually did. Moreover, defendants' argument is counter to the analysis of the Court of Appeals for the Federal Circuit in *Jazz Photo Corp. v. United States*, 439 F.3d 1344, 1357 (Fed. Cir. 2006) (abrogated on other grounds by *Impression Prods. v. Lexmark Int'l, Inc.*, 581 U.S. __, 137 S.Ct. 1523 (2017)), in which patent holder Fuji Photo Film Co., Ltd. ("Fuji") argued that it should have been permitted to intervene or be joined as a necessary party and in which the Court of Appeals responded that "[i]n protests under section 515 [19 U.S.C. § 1515], Congress placed the responsibility of protecting Fuji's patent rights upon the government."

The Commission gives as a reason for intervention its desire to contest subject matter jurisdiction, ITC's Mot. 1, and "to defend the scope and operation of its orders," *id.* at 4. In its motion to intervene, the ITC presents arguments against subject matter jurisdiction that essentially are the same as those defendants raised. The court rejects them for the reasons stated above.

One of the Commission's arguments, which is similar to the argument defendants advanced concerning Commission practice, maintains that "the Commission, and thereby Customs, has consistently interpreted exclusion orders for decades to cover redesigns of adjudged infringers" and that "[t]he mere fact that a product is new does not allow it to escape the exclusion order." *Id.* at 3. According to the ITC, "Wirtgen's interpretation of the scope of the LEO would allow adjudged infringers to easily circumvent the Commission's remedial orders," citing for support *Hyundai Elecs. Indus. Corp. v. Int'l Trade Comm'n*, 899 F.2d 1204, 1210 (Fed. Cir. 1990), *Eaton Corp. v. United States*, 29 CIT 1149, 1163–64, 395 F. Supp. 2d 1314, 1326 (2005), and "decades of Commission decisions." *Id.* at 4. The Commission adds that "Wirtgen's claims are premised on the wrong contention that its machines are outside the scope of the LEO because they were not adjudicated during the investigation and determined to be outside the scope of the investigation (due to lack of importation at the time of the investigation)." *Id.* The Commission summarizes its argument by stating that "Wirtgen's interpretation of the scope of the LEO is inconsistent with decades of Commission practice and Federal Circuit precedent and would allow adjudged infringers to easily circumvent the Commission's remedial orders" and that "[t]he scope of the Commission's order is an issue that requires the Commission's participation." *Id.* at 11.

The Commission's jurisdictional argument is, in essence, that subject matter jurisdiction is lacking under 28 U.S.C. § 1581(a) because the Limited Exclusion Order must be interpreted to apply to the Redesigned 1810 Series machines—not because the Commission determined that these redesigned machines infringe claim 19 of the '693 patent but because the Commission did *not* find that they did *not* infringe. *See id.* ("There was no finding in the underlying investigation that the redesigned products do not infringe claim 19 of the '693 patent . . . ."). According to

such an argument, the court is to presume from Commission practice that the ITC already had

decided that the Redesigned 1810 Series machines must be excluded from entry as of the time

Wirtgen commenced this action, and Customs was merely effectuating that decision.

The court sees no merit in the Commission's argument that the Limited Exclusion Order

must be interpreted to exclude the Redesigned 1810 Series machines, for two reasons.  First, the

underlying premise of this argument is contrary to section 337.  Wirtgen alleges in its complaint

that the Commission expressly decided that the Redesigned 1810 Series machines were not

subject to the section 337 investigation.  Comp. ¶¶ 43–44.  This is an alleged fact the

Commission does not dispute in arguing that jurisdiction is lacking.  If the ITC expressly found

that the Redesigned 1810 Series machines were outside the scope of the section 337

investigation, as Wirtgen alleges, then the redesigned machines could not have been the "articles

concerned," as that term is used in 19 U.S.C. § 1337(d), and therefore they could not have been

the articles over which the Commission had authority to impose an exclusion order.  *See*

19 U.S.C. § 1337(d) (providing that "[i]f the Commission determines, *as a result of an*

*investigation under this section*, that there is a violation of this section, it shall direct" the

exclusion "from entry into the United States" of "*the articles concerned*" (emphasis added)).

Second, the judicial decisions upon which the Commission relies, *Hyundai Elecs. Indus. Corp.*

and *Eaton Corp.*, do not resolve the jurisdictional question before the court.[6]  The ITC's reliance

---

[6] *Hyundai Elecs. Indus. Corp. v. Int'l Trade Comm.*, 899 F.2d 1204 (Fed. Cir. 1990)
involved a challenge to an ITC remedy involving a certification procedure directed to secondary
products.  It was not a challenge to a determination that Customs itself made to exclude
merchandise from entry.  Defendants and the Commission rely on *Hyundai Elecs. Indus. Corp*
for the principle that once the ITC has found a violation of section 337, the burden shifts to the
alleged infringer to demonstrate that redesigned articles do not infringe.  *See, e.g.*, Defs.' Reply
Mem. in Supp. of their Mot. to Dismiss 10 (Feb. 24, 2020), ECF No. 39.  Because it is
indisputable that a party contesting an exclusion of merchandise before the Court of International
(continued…)

on "decades" of Commission practice is similarly unavailing.  The issue of subject matter

jurisdiction must be decided according to the correct interpretation of 19 U.S.C. § 1514(a)(4) as

it relates to 19 U.S.C. § 1337(c).  The Commission's practice cannot alter the jurisdiction of

Article III courts.  *See Carlyle Towers*, 170 F.3d at 310.

Nor is it correct for the Commission to suggest or imply that by bringing this action

Wirtgen is attempting to circumvent a remedial order of the Commission.  Instead, Wirtgen is

pursuing an avenue of judicial review Congress expressly provided in 19 U.S.C. §§ 1499 and

1515, and 28 U.S.C. § 1581(a), with the objective of obtaining release of the merchandise that it

alleges that Customs, not the Commission, excluded from entry.

Finally, the Commission argues that "Wirtgen failed to exhaust the available

administrative remedies before seeking judicial review of the scope of the Commission's LEO."

ITC's Mot. 12 (identifying various procedures that Wirtgen could have pursued administratively

before the Commission and Customs).  This argument is meritless because Wirtgen did not fail

to exhaust its administrative remedies.  Wirtgen did not fail to take the administrative steps that

are required for purposes of obtaining jurisdiction according to 19 U.S.C. § 1515 and 28 U.S.C.

§ 1581(a).  Those steps are the jurisdictional prerequisites the court has identified: the filing of a

timely protest of a protestable decision and the obtaining of a protest denial by Customs.

---

(continued…)

Trade has the burden of establishing admissibility, this principle does not establish a lack of
subject matter jurisdiction in this case.

In *Eaton Corp. v. United States*, 29 CIT 1149, 395 F. Supp. 2d 1314 (2005), this Court
issued a preliminary injunction enjoining the government from permitting entry of certain
merchandise "that has been or still is within the purview of the investigation of the United States
International Trade Commission pursuant to 19 U.S.C. § 1337 . . . ."  *Id.* at 1167–68, 395 F.
Supp. 2d at 1329.  Concerning subject matter jurisdiction, the opinion states that "[a]t this stage
of the proceedings, the court cannot, and therefore does not, conclude that it does not have
jurisdiction pursuant to section 1581(i) of Title 28, U.S.C."  *Id.* at 1162, 395 F. Supp. 2d at 1325.

One of the "administrative" remedies the Commission cites is the pursuing of a "modification" of the LEO through a proceeding conducted according to 19 U.S.C. § 1337(k), a proceeding that the Commission is now conducting.  ITC's Mot. 12.  The gist of the Commission's argument is that Wirtgen cannot now contest, before this Court, the specific merchandise exclusions at issue in this case and must await the results of the Commission's modification proceeding.  This argument is unconvincing.

The mere existence of an ongoing administrative modification proceeding does not place this action within the section 337 exception to protestability that Congress placed in 19 U.S.C. § 1514(a)(4).  An adverse decision in the modification proceeding potentially would be appealable to the Court of Appeals for the Federal Circuit.  *See Allied Corp. v. U.S. Int'l Trade Comm'n*, 850 F.2d 1573, 1580 (Fed. Cir. 1988).  But because jurisdictional facts are ascertained as of the time an action is commenced, *see Ford Motor Co. v. United States*, 688 F.3d 1319, 1324 (Fed. Cir. 2012), the possibility that Wirtgen might be in a position to appeal the outcome of an administrative proceeding at some time in the future does not defeat subject matter jurisdiction over this action.  At the time Wirtgen commenced its action, there was no final determination related to a modification proceeding at the ITC that was "appealable" according to 19 U.S.C. § 1514(a)(4).

Moreover, Congress intended that decisions by Customs to exclude merchandise would receive an expeditious remedy.  *See* 19 U.S.C. §§ 1499(c)(5), 1514(a)(4).  The notion that Wirtgen could not contest the exclusion prior to obtaining the result of a modification proceeding before the ITC is inconsistent with congressional intent that an importer be permitted to contest the merchandise exclusion in this Court immediately, once 30 days had elapsed from the time its protest was denied or deemed denied.  Wirtgen is not required to forego judicial review of the

adverse decision on the exclusion of its merchandise until such time as it has received a second

decision by another administrative agency, one that is not directed to the specific machines that

are the subject of this action.  Defendants make essentially the same argument concerning

19 U.S.C. § 1337(k) (and also § 1337(c)), maintaining that "Congress has provided a specific

path for importers to challenge the Commission's exclusion orders and to establish that

redesigned products no longer violate an exclusion order."  Defs.' Mot. 12.  This argument

suffers from the same flaw as the Commission's, and it is also misguided in presuming, at this

pleading stage of the case, that Wirtgen's Redesigned 1810 Series machines "violate an

exclusion order."

### B. Plaintiff's Second Claim

Plaintiff's principal claim, that Customs unlawfully excluded the six machines from

entry, as presented in Count I of its complaint, Compl. ¶¶ 164–85, is before the court according

to the jurisdiction provided in 28 U.S.C. § 1581(a), for the reasons discussed above.  Count II of

plaintiff's complaint alleges that the notices of detention Customs issued on the three entries "are

unlawful for failing to provide the information required by 19 U.S.C. §1499(c)(2)."  *Id.* ¶ 187.

Plaintiff cites the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02 and asserts jurisdiction

under the court's residual jurisdiction provision, 28 U.S.C. § 1581(i).

The principal claim in the complaint, which arises from the exclusion that Customs

effectuated after detaining the merchandise, is to be adjudicated *de novo*, i.e., on the basis of the

record made before the court, not the administrative record of the agency.  28 U.S.C. § 2640(a).

Because the detentions ripened into exclusions, the court does not view Count II of the complaint

as stating a separate claim over which jurisdiction could exist according to 28 U.S.C. § 1581(i).

*See Miller & Co.*, 824 F.2d at 963.

### C. The Commission's Motion to Intervene

For the reasons discussed previously, 28 U.S.C. § 1581(a) grants this Court subject matter jurisdiction of this action, which arises under section 515 of the Tariff Act.  Intervention in an action to contest the denial of a protest is precluded by 28 U.S.C. § 2631(j)(1)(A) (providing that "no person may intervene in a civil action under section 515 . . . of the Tariff Act of 1930").  Therefore, the Commission's motion to intervene must be denied.  *See Jazz Photo Corp.*, 439 F.3d at 1357.

### III.  CONCLUSION AND ORDER

For the reasons set forth above, the court concludes that it is provided subject matter jurisdiction of this action by 28 U.S.C. § 1581(a).  Because intervention in this case is precluded by statute, the court must deny the ITC's motion.  Upon consideration of defendants' and the Commission's motions and all papers submitted in this case, and upon due deliberation, it is hereby

**ORDERED** that defendants' motion to dismiss (Feb. 12, 2020), ECF No. 27, be, and hereby is, denied; and it is further

**ORDERED** that the motion to intervene of the U.S. International Trade Commission (Feb. 5, 2020), ECF No. 19, be, and hereby is, denied.

                                                          /s/ Timothy C. Stanceu
                                                          Timothy C. Stanceu
                                                          Chief Judge

Dated:  March 4, 2020
        New York, New York